90 So.2d 409 (1956)
Roy Lee BORDERS, Plaintiff-Appellant,
v.
LUMBERMENS MUTUAL CASUALTY CO., Defendant-Appellee.
No. 4247.
Court of Appeal of Louisiana, First Circuit.
October 6, 1956.
Rehearing Denied November 26, 1956.
Writ of Certiorari Denied January 21, 1957.
*410 H. Alva Brumfield, Baton Rouge, for appellant.
Durrett & Hardin, Baton Rouge, for appellee.
TATE, Judge.
The plaintiff was injured on November 1, 1954, in an accident which resulted in a crushing of the index finger of his right hand. Compensation was paid, voluntarily, until July 25, 1955, but after that date no further payments were made. Upon the trial it was stipulated that plaintiff Borders was disabled from doing the kind and character of work which he was pursuing at the time of the accident, and further that compensation payments were terminated because *411 Borders declined to submit to an operation.
The judgment of the District Court decreed that plaintiff is to receive no additional compensation beyond July 25, 1955, "unless within a reasonable time, not to exceed one year from the date of this judgment, plaintiff submits to an operation for amputation of all or a part of the index finger of his right hand by Dr. Thomas Campanella or by any other competent surgeon chosen by plaintiff and approved by defendant." The judgment further decreed that if plaintiff should submit to the operation his rights to recover additional compensation and medical expenses are reserved. Plaintiff devolutively appeals from this judgment.
The sole question is whether Borders' refusal to submit to the operation tendered by the employer was reasonable. For while the jurisprudence cited below is uniform to the effect that the courts may not compel an injured employee to submit to surgery, it also supports the principle that the courts may order compensation payments withheld when an employee unreasonably refuses to submit to surgery which will remove his disability.
The able District Court summarized the criteria of whether an injured employee's refusal to submit to operative procedure is reasonable or not, as follows:
1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?
Both parties concurred with this summary of the applicable law, which indeed is supported by the following jurisprudence, inter alia: Simmons v. Blair, 194 La. 672, 194 So. 585; Turner v. Southern Industries Company, La.App. 1 Cir., 88 So.2d 238; Ashworth v. Calcasieu Paper Company, La. App. 1 Cir., 85 So.2d 681; Clements v. Liberty Mutual Insurance Company, La.App. 1 Cir., 85 So.2d 675; Ebarb v. Southern Industries Company, La.App. 1 Cir., 78 So.2d 553, Per Curiam on rehearing, 78 So.2d 560; French v. Employers Mutual Insurance Company, La.App., 70 So.2d 179; Johnson v. United States Fidelity & Guaranty Company, La.App., 58 So.2d 261, 263; Fredieu v. Mansfield Hardwood Lumber Company, La.App., 53 So.2d 170; Powers v. Allied Chemical & Dye Corporation, La.App. 1 Cir., 45 So.2d 214; Leday v. Lake Charles Pipe & Supply Company, La.App. 1 Cir., 185 So. 655.
Three medical witnesses testified in this case: Doctors Chester A. Williams (general practitioner) and Thomas Campanella (orthopedist), called by plaintiff; Dr. George Azar (surgeon), called by defendant.
These three doctors agreed that Borders could not perform the duties of ironworker with the present condition of the injured right index finger, which is atrophied in part, swollen in part, and fixed in a claw position; it has reached maximum improvement without the intervention of surgery. They further agreed that all or part of this finger should be removed, as useless and in the way of use of the hand, whether or not Borders was engaged in manual labor; that the operation was of minimum pain and danger, and performed under local (rather than general) anesthesia; and that the prognosis of improvement was of reasonable certainty.
Dr. Azar believed that with the operation there is a "reasonable certainty of returning *412 to the position he occupied prior to the injury."
Dr. Williams stated: "Barring any complications or residual from amputation, I think he could probably go back to work as an ironworker. I'm sure that there are ironworkers that have fingers off, and other things being equal, he probably could. Now, whether he would be as good a risk or not on the job, I can't say. The index finger is a very important finger of course. I think he could probably hold down a job as an ironworker, but the only way to see is rather ambiguous, is to try him at it, so to speak."
Dr. Campanella testified that after amputation: "He still will have a permanent loss of that finger and naturally that's a key finger, for that reason we give it a twenty-four value, but he would have to rehabilitate himself and let the third finger do the work of the index finger. He may take a considerably longer time for that adjustment, but eventually I think that he could perform any duties that he would train himself to do, even ironworker."
The only other witnesses to testify, aside from Borders himself, were five experienced ironworkers, including the business manager of plaintiff's union responsible for assigning ironworkers to various jobs. Their testimony was uniform to the effect that an ironworker's right hand is most important in performance of his duties, which require him to climb up as high as 80 feet, using only hands and legs on the "web" of the iron, and to cling to the iron beams, where he is supposed to be able to handle the various wrenches and tools, to do feats of strength, and not to drop these tools.
Every single lay witness testified that a man with a missing index finger or a missing part of an index finger cannot perform the duties of an ironworker, and that he would be a danger to himself and to his co-workers. They testified without exception that certain ironworkers with missing fingers (who had testified in the Powers case, see below) were used on crews only to perform lighter and non-climbing duties. The business agent (Melton) testified that room was made for these crippled men, but that often such amputees could not get employment when light duties were unavailable, since they could not perform substantial functions of the ironworkers' trade.
If this lay testimony is correct and can be accepted as determinative, it is apparent that were we faced with the determination of the degree of plaintiff's disability after an operation amputating his index finger, we would have to hold plaintiff permanently and totally disabled under the record before this court. See Brannon v. Zurich General Accident & Liability Insurance Company, 224 La. 161, 69 So.2d 1, where a carpenter able to perform only the lighter or non-climbing duties of his trade, for whose services consequently there was less market due to the residual from the accident, was held to be totally and permanently disabled within the meaning of the compensation act.
In Newsom v. Caldwell & McCann, La. App., 51 So.2d 393, this court in an opinion written by our distinguished predecessor. Judge Dore, had occasion to pass upon a very similar question. Newsom was an ironworker with a slight (10%) residual disability of the leg. Both doctors testifying thought that this residual disability should not prevent a return to the job. This court found Newsom disabled in view of the testimony of the lay witnesses, other ironworkers, that a man with this disability was dangerous to work with, and in view of plaintiff's own fear of injury due to this weakness.
Regarding the doctors' feeling that upon a return to work, the injured employee should be able to compensate for his weakness, Judge Dore commented, 51 So.2d 397:
"If, however, plaintiff cannot go back to climbing steel structures, either because of a fear on his part that climbing would endanger his life or because of a similar fear on the part of employers, then he will never have an opportunity to `regain his function', and the *413 opinion by the doctor that his efficiency would increase after he returned to the job becomes meaningless and of no value."
Further, Dr. Williams frankly admitted that the degree of risk to himself and others involved in a finger-amputee's attempting to perform the climbing duties of an ironworker was "hardly even a medical question. I think a layman could make that opinion." As Judge Dore stated in the Newsom case, 51 So.2d 393, at page 397:
"The court can take cognizance of the fact that when doctors express opinions on such a subject as this their opinions are not fortified by experience such as has been had by the men who have for years climbed and straddled the steel girders."
Defendant-appellee in most able brief and oral argument urge that this Court in Powers v. Allied Chemical & Dye Corporation, La.App., 45 So.2d 214, has ruled that an ironworker is not disabled from performing the duties of his trade by an amputated index finger. It is true that the very able and distinguished Judge Ad Hoc Fruge held under the facts and circumstances of that case, and based upon the record before the court in that case, that such a determination by the trial court therein was not manifestly erroneous.
It is of some interest that in the Powers case, the lower court and ourselves relied upon the testimony of Messrs. Nesom, Ellis, and Norman, ironworkers with amputated fingers who testified they were performing the duties of their trade without difficulty. The lay witnesses testifying in the present case (under cross-examination) stated that these particular individuals performed only the lighter or non-climbing work of ironworkers; and Nesom, Ellis, and Norman did not appear in the present case to testify to the contrary.
We were interested to note that the Powers of the Powers case testified herein that, despite the opinion of the doctors in 1949 that his amputated finger would not prevent him from climbing or performing the other duties of ironworker, nevertheless he had never since his amputation in 1949 attempted to do so. At the time of trial herein, Powers was employed as an auto mechanic at $40 per week rather than as an ironworker at $85-114 per week, "because I couldn't trust myself to climb because I would endanger my own life and I would endanger the men below because I couldn't hold a spud wrench."
Each case must be decided upon its own facts and circumstances. The record in the Powers case differed from the record now before us; testimony relied upon therein is absent from the present case, while other testimony has been educed for us which was absent from the Powers record.
In deciding whether present plaintiff Borders' refusal to submit to surgery is or is not reasonable, it is not sufficient for us to express our opinion that it would be sensible for him to undertake this treatment, in the absence of pain or danger and with the probability that his physical disability would be lessened.
If after the operation Borders' legal disability would be as great, the effect of our refusing to permit him to receive compensation until he agrees to submit to the operation is to substitute our notion as to his own welfare for his (however unreasoning we may regard his fear of an operation), without any relationship whatsoever to the legal questions posed before us now, which simply are: Is Borders disabled; if so, would the recommended operation relieve this disability; and if so, is his refusal to submit to same unreasonable?
We think the preponderance of the evidence in this record indicates that even after the recommended operation amputating his index finger, Borders would still legally be totally disabled from performing the duties of an ironworker. We think it was not unreasonable as a matter of law for him to refuse to submit to an *414 operation which would not remove his legal disability; or to refuse to accept the doctors' guess that over a period of time he would eventually recover his dexterity and compensate for loss of the finger, if he could overcome any (not unreasonable) fear of danger to himself and his fellows and if he could find some employer willing to bear with him during this period.
For the above and foregoing reasons, the judgment of the District Court herein is reversed, and judgment is rendered in favor of plaintiff, Roy Lee Borders, and against defendant, Lumbermen's Mutual Casualty Company, awarding plaintiff compensation at the rate of $30 per week commencing November 1, 1954, and continuing during disability not to exceed 400 weeks in all, together with legal interest on each past-due installment from its maturity date until paid, subject to credit to defendant of compensation paid by it to July 25, 1955. Defendant-appellee to pay all costs.
Reversed and rendered.
ELLIS, Judge (dissenting).
The majority opinion has correctly analyzed the medical testimony, which is unanimously to the effect that the plaintiff in this case, after the simple operation for the removal of the plaintiff's index finger, that the latter could, with reasonable certainty, return to the position he occupied prior to the operation and perform all the duties required of an ironworker.
The majority opinion accepts the lay testimony to the contrary as a basis for reversing the judgment of the District Court, which I think is correct and certainly not manifestly erroneous under the testimony in this case, for the medical testimony is completely in favor of the operation and a reasonable certainty of recovery, and should be accepted as controlling. The majority opinion in dealing with this phase of the case, relies upon the expression of this Court in Newsom v. Caldwell & McCann, La.App., 51 So.2d 393, to the effect that lay testimony should be accepted in a case involving the ability to climb rather than that of the doctors as the opinion of the former is fortified by experience. The Newsom case is really not applicable as it did not involve the question of an operation which would result in the loss of one of the fingers of the hand, and for a close reading of the facts as found in the majority and dissenting opinion see Nesom v. Caldwell & McCann, La.App., 48 So.2d 713. The first time the Newsom case was before this Court will reveal that Newsom suffered a crushing injury to his left leg above the knee, which, according to the medical testimony, resulted in a ten percent loss of function in his left leg, which the medical testimony regarded as permanent, and ten percent loss of flexion in the left leg, so that he could not bend this leg against his thigh, and the medical testimony also revealed that the left leg was one inch smaller than the right leg at equal points above the knee, which the doctors attributed to atrophy of the muscles because of the injury. Newsom also prior to the accident had a congenital weakness of both knees, and as a result of the accident this became more pronounced in the left leg, showing an aggravation of the congenital condition as a result of the accident. Further, as a result of injury to a nerve, Newsom had an area of diminished sensation or numbness on the anterior medial aspect of the left leg. Based on these injuries none of the doctors thought that the plaintiff could go right back to climbing, but would have to take precautions and be careful, and would also have to take guided exercise, which they thought might improve the muscle weakness, but not the numbness. In this case there was no necessity for lay testimony. As far as the writer is concerned, in the Newsom case, my agreement with the majority opinion was based upon the medical testimony. I did think that the plaintiff's fear of climbing had a real bearing, as shown by the medical testimony.
In my opinion the lay testimony in this case cannot be considered as completely decisive where this Court has in a previous *415 case accepted lay testimony in direct conflict with the lay testimony in the case at bar, and based upon such testimony, together with medical testimony, rendered a judgment in accord with that of the District Court and contrary to that of the majority herein. Let us examine the case in this light.
In addition to himself, plaintiff produced as witnesses five laymen, all of whom stated that the plaintiff, without the finger, would be unable to climb or to use the rivet gun or to connect steel with a wrench. Only one of these witnesses had lost a finger and that was Richard M. Powers, who was the plaintiff in the case of Powers v. Allied Chemical & Dye Corporation, 45 So.2d 214, 215, decided by this court and involving the question of the amputation of the little finger which was ordered by the District Court, and after the operation Powers still claimed total, permanent disability to perform the duties of an ironworker. This case, with Judge Fruge, Judge-ad-hoc, acting as organ of the Court, held the following:
"At the first trial of this matter numerous orthopedic specialists testified that an amputation of the finger would relieve plaintiff of his disability and incapacity. After plaintiff's finger had been amputated by Dr. J. Willard Dowell, a physician of plaintiff's own choosing, Dr. Dowell testified that plaintiff was able to do the work that he had been accustomed to doing and stated that the hand had healed perfectly with the exception of one small adherence scar. Doctors T. Jeff McHugh and Charles McVea, who had examined plaintiff before the first trial on this matter also opinioned that the amputation of plaintiff's finger would relieve any disability insofar as performing the duties of an ironworker. After the amputation of the finger by Dr. Dowell they testified that the amputation had been a very successful one, that the hand had healed completely and that the plaintiff was able to flex and extend all of the remaining fingers. They further testified that plaintiff had the full range of motion in all of the remaining fingers and stated that plaintiff was able to perform the duties of an ironworker.
"In the Lower Court many men were called to testify, who had disabled members of the hand. A Mr. Henry B. Nesom testified that he was employed as an ironworker and had lost his thumb right down to the hand; that he was employed as an ironworker and did all sorts of heavy work including climbing, rigging and other work.
"A Mr. Charles H. Cassle who had lost his index finger when a child was presently following the employment as an ironworker.
"A Mr. Walker Roy Ellis, who had lost half of a ring finger and had two fingers partially smashed, which were partially stiff, held an ironworker's card, and a Mr. Wilton R. Davis, who had some crippled fingers on both hands and only had about three-fourths of the grip in his left hand was an ironworker who was following that occupation satisfactorily.
"Taking into account the duties of an ironworker, as described by the plaintiff himself, and his witnesses, as well as the testimony of the other ironworkers suffering much greater disability than the loss of a little finger, there is an overwhelming preponderance of evidence that the plaintiff can perform his duties as an ironworker.
"All material testimony in the case leads to the conclusion that the amputation of plaintiff's finger was successfully performed. That he has had a perfect recovery and all he is left with is the loss of a finger for which he has been paid all the compensation he is entitled to under the law."
Thus we see that this court has already held in the case of a man who had lost a *416 little finger, based upon the testimony of witnesses who had disabled members of the hand and of one in particular who had lost his index finger, that such a loss did not prevent one from performing the duties of an ironworker.
In the present case the lay witnesses produced were not disabled and could not speak with the same authority as the disabled witnesses who testified in the Powers case. It is true that the lay witnesses in the present case stated that they would have to see the witnesses who testified in the Powers case perform the duties of an ironworker before they would believe it. Be that as it may, this court, relying upon the testimony of witnesses with such a disability, who speak with greater authority than those without a disability, has already held that the amputation or loss of a finger is not disabling to perform the duties of an ironworker. Further, in the present case the lay witnesses also testified that they were acquainted with some of the witnesses who testified in the Powers case and who had disabled members of the hand, and that these men were being carried, so to speak, by their fellow workers. In other words, if one of these men with a finger missing was ordered to climb, a fellow worker would perform this duty instead. Not one of these witnesses who testified in the Powers case and whom the witnesses in the present case all knew and had worked with was produced, and not one line of testimony that the ironworkers with a missing finger had actually missed a day's work, and on the contrary, it is positively shown by plaintiff's own witnesses that these witnesses received the same wages as any other ironworker. Powers, in testifying in the case under consideration, stated that he had never returned to ironwork because he did not think he had sufficient strength in his hand to climb or perform some of the other duties ordinarily required in the trade, however, he did state that he made no effort and had never applied for such work after the amputation of his little finger. He further stated that the operation in some manner had caused adhesions in the hand and resulted in total disability, however, the testimony of the doctors as quoted above is to the contrary. During the trial of this case, some of the medical testimony was to the effect that a man with a finger gone would probably be a greater risk than one without, and that if there was one man to be selected for a job and plaintiff were to apply and he had applicants with all their fingers, he would select one with all the fingers. However, this testimony is of little weight in view of the fact that in the Powers case as well as in the case at bar, it was shown that ironworkers with a missing finger or disabled member were constantly working and there is not one line of testimony to show that these men had been rejected, or at least had ever been without work, because of the missing finger, or had ever suffered any reduction in their wages in comparison to an ironworker with no finger missing. The learned judge of the District Court, evidently relying upon what this court found and stated in the Powers case, supra, and upon the facts as testified to in the present case, in effect found that the plaintiff, if this index finger was partially or totally amputated, could probably be expected to be able to return to his former duties.
The learned Judge of the Court below relied upon the Powers case and the facts enumerated in the opinion upon which an operation for the amputation of plaintiff's finger was ordered, and upon which this court rendered judgment rejecting the plaintiff's demand for total and permanent disability after the operation, and the medical testimony in the case at bar in ordering plaintiff to submit to the operation for the amputation of the index finger. The majority, in effect, states that each case should stand upon its own bottom, and that the witnesses who testified in the Powers case were not brought in to testify on behalf of the defendant in this case. The lay witnesses who testified in the Powers case are still employed as ironworkers, and if any of *417 them had changed their mind or opinion as to whether they could perform all the duties as an ironworker, the plaintiff could have had them summoned, as well as the defendant. The point is that this court has accepted as a fact that one who had lost an index finger or his little finger would be able with reasonable certainty to perform all the duties of an ironworker, including climbing. It is clear that this is the only duty of an ironworker that there is the least possibility the plaintiff in this case could not do.
Possibly the next case we have involving the same question as here the witnesses will testify as they did in the Powers case, that the loss of the index or little finger or a member of the hand, did not render them permanently and totally disabled to climb or perform all the duties of an ironworker. Then this court would order an operation for the amputation of an index finger, based upon testimony that such a loss would not prevent the injured party from performing all the duties of an ironworker. In other words we will hold one way today and another tomorrow on the question of whether the loss of a finger only renders an ironworker totally and permanently disabled. This should not be. In my opinion, we should follow the decision of the Powers case and order this finger removed for the reason that the entire medical testimony is to the effect that the plaintiff, after the operation and sufficient healing time, could with reasonable certainty, be expected to be able to perform all the duties of an ironworker. The lay testimony in this case should be rejected in the face of the accepted lay testimony in the Powers case. In my opinion, the question of the loss of an index finger, with no other complications, has been held by this court to not constitute total disability insofar as an ironworker is concerned.
For the reasons given, I am of the opinion that the judgment of the District Court is manifestly correct and should be affirmed. I therefore respectfully dissent.