94 So.2d 460 (1957)
Hammie DUPLECHIEN, Plaintiff-Appellant,
v.
STATES EXPLORATION COMPANY et al., Defendants-Appellees.
No. 4363.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
Rehearing Denied May 2, 1957.
*462 Alfred R. Ryder, Oberlin, for appellant.
Lawes, Cavanaugh, Hickman & Brame, Lake Charles, for appellee.
TATE, Judge.
In these proceedings for workmen's compensation, plaintiff's present disability from an accident in the course of his employment is admitted. The principle question is whether plaintiff's refusal to submit to a tendered operation is so arbitrary and unreasonable as to relieve defendant employer and its co-defendant compensation insurer from the obligation of paying further compensation unless plaintiff employee agrees to submit to the operation in question.
Defendants paid all workmen's compensation benefits due from the initial wrist injury of November, 1955 up through April 27, 1956. Compensation payments were terminated when plaintiff through his attorney refused surgery recommended as able to end his disability. The operative procedure in question is a resection of the distal ulna of the right arm, that is, a cutting off of the lower 3/4 inch of the inner bone of the right forearm.
Both the orthopedic specialist and plaintiff's family physician agree that, by eliminating pain in ordinary use of the wrist, this operation would substantially relieve plaintiff's present disability and permit him to return to the type of work in which engaged at the time of the industrial accident herein.
In Borders v. Lumberman's Mutual Casualty Co., La.App., 90 So.2d 409, certiorari denied, this Court recently had occasion to summarize the jurisprudence on the question: While "the courts may not compel an injured employee to submit to surgery, * * * the courts may order compensation payments withheld when an employee unreasonably refuses to submit to surgery which will remove his disability," 90 So.2d 411. Further, the relative criteria in determining whether an employee's refusal to submit to operative procedure is reasonable are:
(1) Can the operation reasonably be expected to relieve the legal disability?
(2) Will it cause the claimant a minimum of danger to his life and a minimum of pain?; and
(3) Is there substantial agreement among all medical witnesses testifying as to the necessity for the operation and the probability that the disability will be cured without recurrence?
Although one reason the plaintiff was unwilling to submit to the operation in question was his personal fear that the condition of his arm would not be materially improved despite his subjecting himself to the risk of surgery, nevertheless as above stated, the medical testimony is in entire agreement that, medically, the relatively minor operation should be performed, with excellent prospects of relieving the disability in question within 3-5 months under supervised therapy thereafter.
The chief legal question remaining is whether the danger involved in the use of general anesthesia is so relatively insubstantial under the facts of this case, that the employee's failure to accept the suggested operative procedure is not reasonably based under the facts in this case. (The medical witnesses testified that due to the difficulty of anesthesizing the bone that would have to be cut or sawed off, local anesthesia is impractical, although not impossible.)
The claimant objected to undergoing general anesthesia (being "put to sleep") because of fear of same, based upon his conversations with a nephew who had undergone an (unsuccessful) knee operation.
Both the orthopedic specialist and plaintiff's family physician testified that in general health he was a good candidate for surgery, as did an internal specialist called upon to examine plaintiff especially for this *463 purpose. A physician anesthesiologist who examined plaintiff and used the findings of the internal specialist, described the procedure to be involved and estimated that the mortality rate concerning a man in plaintiff's physical condition (with a physician anesthesiologist administering the anesthesia) would be less than one in five thousand; he further stated that according to recent statistics from the Massachusetts General Hospital, with the use of physician anesthesiologists (as compared to non-physician anesthetists) the mortality rate had been less than one in ten thousand cases. The medical witnesses admitted that unusual fear could increase the danger of surgery under a general anesthesia, but stated that with proper premedication (the use of calming drugs) such fear would not play a calculable part in the risk of death from operation.
The physician anesthesiologist testifying frankly admitted that "anesthesia is an approach to death, but it should be a controlled approach," (Tr-69). The substance of all this medical testimony is that whether or not the general anesthesia is dangerous or suitable as to a particular person depends upon all the circumstances surrounding the particular person and the particular operation in question.
The majority of this Court frankly admits that it approached study of this question with some doubt that an injured claimant should ever be required to submit to surgical procedure requiring general anesthesia and the consequent some risk to life. But on the basis of the record presently before us, and the surrounding facts and circumstances, we are unable to hold manifestly erroneous the District Court's determination that in this particular case the risk of death or danger through use of general anesthesia is not substantial enough so as to excuse the employee's continued refusal to submit to surgery after a final judicial assessment of the risk as such.
Defendants-appellants re-urge by answer to the appeal their plea of pre-maturity, overruled by the District Court. This plea is based upon LSA-R.S. 23:1314, which provides that the employee instituting suit for compensation must allege that he is not being paid the workmen's compensation benefits to which he is entitled, and:
"* * * when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations of nonpayment or of failure to render medical attention or failure to furnish medical reports is justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved." (Italics ours.)
With considerable logic defendants urge that when it is judicially determined after trial that an employee's refusal to submit to a tendered operative procedure is not reasonably based, then ispo facto the employee's allegation that he is not being paid compensation to which he is entitled is thus found to be "without reasonable cause," and the allegation of nonpayment is found not "justified"; and the employee's suit must be dismissed.[1]
*464 As the able District Court pointed out in overruling this exception, it would not be fair to characterize the present employee's refusal to submit to the recommended surgery as so "unreasonable" when, in his words "there is some likelihood that there will be disagreement on this point among the judges of the various trial and appellate courts"as to justify dismissal of his suit, and loss of workmen's compensation benefits due in the interim. The question of whether the employee's refusal to accept the tendered surgery is reasonable, is not a medical question; it is a legal question, involving not only an assessment of the medical testimony, but of the circumstances surrounding this particular employee under the particular facts of this particular case, and an application to these facts of the legal standards evolved and evolving through the jurisprudence. We are inclined to believe that such determination can never properly be made ex parte by one of the interested parties, but only by the court after a judicial assessment of all the surrounding facts and circumstances of the particular case concerned.
We are fortified in these conclusions by the following comments of that eminent authority, Dean (now Under-Secretary) Larson, in his treatise, Workmen's Compensation Law, Volume 1, pp. 189-191, Section 13.22 (footnotes omitted):
"The question when compensation should be suspended because claimant refuses to submit to reasonable treatment or surgery is one of the most delicate medico-legal issues in the entire realm of workmen's compensation. It is easy enough to state a general rule that such unreasonable refusal becomes an independent intervening cause responsible for persisting consequences which the treatment or surgery would have cured. The difficulty arises when `reasonableness' has to be defined. The judgment usually resolves itself into a weighing of the probability of the operation's successfully reducing the disability by a significant amount, against the risk of the operation to the claimant. If the risk is insubstantial and the probability of cure high, refusal will result in a termination of benefits. But if there is a real risk involved, and particularly if there is a considerable *465 chance that the operation will result in no improvement or even perhaps in a worsening of the condition, the claimant cannot be forced to run the risk at peril of losing his statutory compensation rights. In the commonest operations presenting this problem hernia, intervertebral disc, and amputations most courts will not at present disturb a finding that refusal to submit to the operation is reasonable, since the question is a complex fact judgment involving a multitude of variables, including claimant's age and physical condition, his previous surgical experience, the ratio of deaths from the operation, the percentage of cures, and many others. The matter cannot be determined automatically as a matter of medical statistics and expert testimony. The surgeon who sees several operations every day and who testifies that the chance of fatality is `only five per cent' naturally has a different point of view than the claimant who has never had a major operation and might quite understandably prefer to enjoy life as best he can with his injury; rather than take a one-in-twenty chance of being dead. On the other hand, refusal of surgery cannot be deemed reasonable when the only reason shown for the refusal is the claimant's subjective fear of the operation." (Italics ours.)
Considering the remedial nature of the workmen's compensation statute, the burden is and should be put upon the employer to secure a judicial determination of the necessity of the surgery, rather than upon the employee to prove that his own refusal to submit to same is reasonably based. This is certainly so in the present instance, when the employee's initial refusal to submit to an operation was based on grounds not patently trivial.
Our able brother in his learned and acute dissent points out abuses on the part of employees which may occur through dilatory refusals to accept undoubtedly reasonable surgery. The present case does not concern such an instance.
Further, the workmen's compensation statute is protective in purpose and is designed to "insure that an employee whose wages were discontinued as the result of injury sustained during the course of his hazardous employment would be paid weekly compensation on which to subsist during the period of his disability," Puchner v. Employers' Liability Assurance Corporation, 198 La. 921, 5 So.2d 288, 291, 292. Just as abuses on the part of unscrupulous employees taking advantage of the present ruling may be imagined, so may abuses on the part of unscrupulous employers and insurers (if such there be), should upon the contrary ruling they be legally entitled to disrupt compensation payments permitting minimum subsistence to admittedly disabled employees, ex parte and without judicial sanction.
But the compensation act must be interpreted with a view to the vast mass of ordinary, decent employees, employers, and insurers concerned, not only to the extreme instances of unscrupulosity which may occasionally occur. The legislature has not provided that an employee's compensation payments may be suspended because of his unwillingness to submit to an operation; it is an equitable judicial doctrine. The employee is thus entitled to his day in court (including appellate review) to test the reasonableness of his grounds of unwillingness, under the circumstances of the particular case concerned. It is to be supposed that the vast mass of employees will not refuse on trivial grounds an operative procedure recommended, which may reasonably be supposed to end disability and pain and enable a return to earning decent wages again, greater than the bare subsistance payments of weekly compensation.
The vast mass of well-intentioned employees should not be deprived of their right to have this question judicially determined before subjecting them to any penalty for their refusal to accede to their adversaries' ex parte determination that the *466 operation is reasonable, because of the mere possibility of abuse by an unscrupulous few any more than the vast mass of well-intentioned insurers are penalized for nonpayment of weekly compensation which the courts find due after trial to an injured employee, Clements v. Liberty Mutual Insurance Co., La.App. 1 Cir., 85 So.2d 675, in the absence of arbitrariness or capriciousness, Fruge v. Pacific Employers Insurance Co., La.App. 1 Cir., 71 So.2d 625. Both are entitled to resist their opponents' demands until the courts order otherwise, without fear of penalty because they chose to assert their legal right to litigate the question.
For the above and foregoing reasons, the judgment of the District Court is affirmed, but must be recast due to the appellate delays which have intervened.
For the above and foregoing reasons, the judgment of the District Court is affirmed awarding plaintiff compensation at the rate of $30 per week, commencing November 14, 1955 (subject to credit of compensation paid), with legal interest upon such payments from date of delinquency until paid, and further assessing defendants with all costs of the proceedings below; such weekly compensation not to be paid exceeding four hundred weeks in all.
It is further ordered, adjudged, and decreed that plaintiff's right to receive compensation payments beyond those due up to sixty days from date of finality of this judgment, is conditioned however, that if within sixty days from date of finality of this judgment, plaintiff does not submit to an operation on his right wrist, as described in these proceedings, by a competent orthopedic surgeon of his own selection and at the exclusive cost of defendants (including hospitalization, etc.); on his refusal to submit to such an operation within that time and without reasonable grounds, then plaintiff's right to receive further compensation as the result of the present suit shall cease after the expiration of the said sixty days; provided further that at any time after the said operation herein ordered, the defendant is given the right to show that by reason thereof, or otherwise, plaintiff's disability no longer exists, and his compensation should cease.
The cost of this appeal would be assessed against plaintiff-appellant except that this suit is in forma pauperis.
Affirmed.
LOTTINGER, Judge (dissenting).
I dissent from the majority opinion herein overruling the plea of prematurity for the following reasons.
The record shows that petitioner was injured on November 14, 1955 and his injury was aggravated on or about January 4, 1956. The injury was diagnosed as an acute hyper extension injury of his right wrist with a resultant tear of the radial ulnar and styloid triquetral ligament as well as a probable disruption of the triangular articular cartilage between the radius and ulnar at this level. The injury resulted in a marked loss of disability in petitioner's hand, so as to totally disable him from doing his work. In paragraph 11 of the petition, plaintiff admits receipt of weekly compensation payments at the prescribed rate at the time of his injury up to April 27, 1956. However the evidence shows that the benefits were actually paid to May 4, 1956. Following this admission plaintiff alleges as follows:
"* * * From this latter date, despite amicable demands made, both of the defendants have failed and refused to pay your petitioner any compensation whatsoever, despite their knowledge of the accident, and despite their knowledge of the doctor's advice that resection of the distal ulna would be necessary to reestablish function of petitioner's wrist. * * *"
To the petition thus framed, the defendants have interposed (a) plea of prematurity and (b) alternative rule to show cause why *467 plaintiff should not be required to submit to recommended surgery to be performed by plaintiff's present medical expert or other surgeon of his choice at defendants' cost, failing which, his right to further prosecute this accident or request further benefits by virtue thereof should not be suspended during the period of his refusal. In connection with defendants' plea of prematurity, defendants deny and controvert plaintiff's allegations that compensation is due and affirmatively aver that the allegations are without reasonable cause of foundation in fact under the provisions of LSA-R.S. 23:1314. It is shown that on February 24, 1956 petitioner's own orthopedic surgeon recommended resection of the distal ulna and the defendants tendered full expense of the operation to petitioner on March 26, 1956, April 12, 1956 and April 20, 1956. As the operation was refused by petitioner the defendants stopped all payments on May 4, 1956. Nineteen days thereafter suit was filed on May 23, 1956. After hearing and trial on both the exception and the rule, the exception of prematurity was overruled. The Court rendered judgment on a rule to show cause why petitioner's suit should not be suspended until such time as he should submit to recommended medical care and procedure. The Court gave judgment on said rule in favor of defendant with the provision that if petitioner fails to have the operation performed within 60 days, all further compensation payments should be stopped. The petitioner has appealed and the defendant has answered the appeal seeking maintenance of its plea of prematurity.
The record shows that three specialists examined the petitioner to determine whether or not he was a good surgical risk for the particular operation which he required. Dr. Schneider, an orthopedic surgeon in Lake Charles, of plaintiff's choice, testified as to the injury to petitioner as well as the procedure required in the operation. As to the injury, he stated that petitioner was presently totally disabled and that his wrist would become worse unless the operation was performed. He stated that unless the operation was performed the petitioner would never recover the use of his wrist. He did state, however, that there was a good possibility of an operation within the near future being very successful and the petitioner would recover almost full use of his wrist, except for a possible slight weakness which would in no way bother him. Dr. Schneider testified that after a successful operation the petitioner would be able to return to his former job and would be well able to perform said job. As to the operation itself, Dr. Schneider classified it as being a relatively simple one which he has performed many times, and that he felt sure that the operation on petitioner would be successful. As the operation required chipping into the bone, it was Dr. Schneider's opinion that a general anesthesia would be required for the operation, although it could possibly be performed by local anesthesia. Dr. Schneider then testified that the operation itself was a minor one and that he knew of no reason, from the medical standpoint, why his recommended surgery should not be performed on Mr. Duplechien and that the operation would not jeopardize the life of Mr. Duplechien or the affected limb more than the usual risk inherent in the administration of anesthesia; that it was less hazardous to the life or affected limb than the operation for the removal of the semilunar cartilage; that there would not be involved any more pain or discomfort than is associated with any surgical procedure and that he would have no hesitancy in performing the recommended surgery on Mr. Duplechien.
Dr. Kent, an anesthetist of Lake Charles, also testified as to the operative procedure from the standpoint of his specialty. He had examined plaintiff on June 22, 1956. He testified that the operation itself was a minor one. He further testified that a general anesthesia is always preferable in an operation which required the cutting of a bone. He stated that although a local anesthesia would deaden the flesh portion of the *468 body, it would not penetrate the bone and the patient would feel a dull pain, similar to a tooth-ache pain, when the bone is chipped. He testified, however, that a person under general anesthesia "is approaching death" and would feel nothing. He concurred in Dr. Schneider's testimony to the effect that the only danger of the operation would be the inherent danger of the anesthesia, and he testified that the mortality rate of a person of petitioner's age (which was 40 years) and health would be one in five thousand. Dr. Kent further stated that as a result of his examination of the claimant, Mr. Duplechien was a satisfactory risk for general anesthesia.
Dr. Anderson, who testified on behalf of defendants, is a specialist in internal medicine. He testified that he had thoroughly examined the petitioner and found no reason whatsoever why the operation should not be performed, and why a general anesthesia should not be administered to petitioner. Further medical testimony was given by a general practitioner who concurred in the testimony of the specialists to the effect that the petitioner should undergo the operation.
The only reason the record discloses as to why the petitioner would not agree to the operation was:
1st. He stated that the doctors would not guarantee success, and
2nd. He was afraid.
I feel both of these reasons were very poor excuses for remaining crippled the remainder of his life while all the competent medical testimony is to the effect that the prognosis would be very good toward achieving a good result and rehabilitation of this patient by what is considered a minor operation. The medical profession is a highly specialized and honored one and I feel that no doctor would be willing to guarantee the success of any operation however slight. As to the petitioner being afraid, Dr. Schneider said that it is only normal, that he himself would be afraid if he was about to receive an operation. Be that as it may nevertheless, according to the medical testimony, a person is administered drugs in some form or another before he is brought to the operating room and by that time the fear is removed.
All of the above evidence is admissible for consideration of the plea of prematurity filed by the defendants. The defendants based their plea of prematurity on the basis that compensation is not now due and they aver that the allegations of petitioner are without reasonable cause or foundation in fact because of the refusal of petitioner to submit to the operation as was tendered by defendants. Defendants cited LSA-R.S. 23:1314 as basis for their plea of prematurity and seek, thereunder, to have the petition dismissed.
LSA-R.S. 23:1314 reads as follows:
"Unless in the verified petition above referred to it is alleged (where the petition is filed by the employee or his dependents) that the employee or the dependents is not being or has not been paid, and that the employer has refused to pay, the maximum percent of wages to which petitioner is entitled under the provisions of this Chapter, or that the employee has not been furnished the proper medical attention, or that the employee has not been furnished with copies of the reports of examination or examinations made by employer's medical practitioners after written request therefor has been made under the provisions of this Chapter, the presentation or filing of such petition shall be premature and shall be dismissed; when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations of nonpayment or of failure to render medical attention or failure *469 to furnish medical reports is justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved." (Emphasis ours.)
It is defendants' position that in view of the nature of the operation and the prognosis for its success, that plaintiff's allegations of non-payment of compensation benefits are not justified under the facts of this case within the clear meaning of the provisions of the statute hereinabove quoted and that the plaintiff is not legally entitled to be paid compensation during the period when his disability is occasioned by his own wilful refusal to submit to proper medical treatment. Our jurisprudence is now to the effect that an employee should not be paid compensation during the period when his disability is occasioned by his own wilful refusal to submit to proper medical treatment. Powers v. Allied Chemical & Dye Corp., La.App., 46 So.2d 332; Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759; Simmons v. Blair, 194 La. 672, 194 So. 585.
In the Bronson & Simmons cases, supra, the Supreme Court refused to order claimant to submit to an operation for the repair of a fractured or torn semilunar cartilage. Similar operations, however, were ordered in French v. Employers Mutual Insurance Co., La.App., 70 So.2d 179 and Fredieu v. Mansfield Hardware Lumber Co., La.App., 53 So.2d 170, 174 by the Second Circuit Court of Appeal.
The medical testimony in the instant case shows that the operation necessary to repair the petitioner's disability is less serious than that involved in the above mentioned cases. There are no reported cases covering an operation similar to the one required by petitioner.
This is the first time that the question of a plaintiff's refusal of a tendered operation and as a result defendants denying and controverting plaintiff's allegation (that compensation is due) has been raised or presented in form of a plea of prematurity. I am of the opinion, nevertheless, that the plea is good and same should be maintained. I do not feel that the petitioner's allegation (that compensation is due) is reasonable or justifiable under the evidence presented. If his refusal to submit to this operation was found reasonable after judicial determination, then I would say his demand for further compensation would be justifiable, but his refusal to submit to this operation was found by the Lower Court as well as this Appellate Court to be unreasonable. Then how can we say his allegation of non-payment is justifiable? All the doctors testified that petitioner should undergo the operation, that chance of his complete recovery are very good and that he will be able to perform his previous labor within a few weeks after a successful operation. We are of the opinion that the operation suggested or recommended by the medical experts will enable plaintiff to again enjoy a useful and normal life and do the work he was doing at the time he was injured and work of similar kind and character. Although the Court cannot order a person to submit to an operation, I feel that his arbitrary refusal to submit thereto under the circumstances presented in this case do constitute reason for dismissal of his petition was as provided under the provisions of LSA-R.S. 23:1314 as the allegations of the petition of non-payment are not justified under the evidence presented.
It appears to me that the controversy existing between the employee and the employer, that is, the refusal of the tendered operation versus claim that compensation is due, is properly and squarely presented for judicial determination in the plea of prematurity. If, after judicial determination on the plea, the court decides that the employee was unreasonable in his refusal to submit to the operation, how can it be said that the claim that compensation is due is justifiable in view of the jurisprudence that an employee should not be paid compensation during the period when his disability *470 is occasioned by his own wilful refusal to submit to proper medical treatment. The purpose and reason behind defendants' plea of prematurity (which is the instrument that brought to a head the controversy at issue for a judicial determination) is to stop compensation and not allow further compensation due to the unreasonable refusal to submit to proper medical treatment. The controversy itself came into existence when the employee unreasonably refused to submit to the operation, that is May 4, 1956, and that is when the compensation should end. Under these circumstances the merits of the controversy are disposed of under the plea of prematurity after judicial determination and all parties have had their day in court. Naturally if the employee's refusal to submit to the operation in the case at bar had been found reasonable, then the allegation that compensation is due would have been justifiable and the employee would be entitled to compensation, but that is not the case here. The sum, substance and effect of the majority opinion herein is that the refusal to submit to the operation is unreasonable, but still the plaintiff is entitled to compensation after the controversy came into existence, and until sixty days after the finality of this judgment, which to me is all contrary to the jurisprudence cited above and not equitable as hereinafter pointed out.
According to LSA-R.S. 23:1314 as hereinabove cited there is no question in my opinion that the plea of prematurity is a proper procedural remedy under the circumstances and facts of this case. According to the last sentence in LSA-R.S. 23:1314, "And the question of whether or not such allegation of nonpayment (that compensation is due) is justified under the facts shall (that is, must) be determined by the court before proceeding with the hearing of the other issues involved." That to me is clear and unambiguous language that the plea as filed herein must be determined by the court before proceeding with the hearing of the other issues involved.
According to the rule of the majority herein, an injured employee may recover compensation for a year or more when he is really not entitled to any due to his unreasonableness and unjustifiable refusal of an operation or simple surgical procedure to cure his disability such as in the case at bar. It is true in the instant case that the present suit was filed only nineteen days after compensation was discontinued, but still I can foretell that with the necessary appellant delays, rehearing and application for writs, that the plaintiff herein will recover compensation for more than a year after May 4, 1956, when in truth and in fact, he is not entitled to any after said date due to his arbitrary and unreasonable position or demand in the matter. Now this is a case where no dilatory tactics were employed because the plaintiff lost no time in filing suit but suppose an injured employee delayed in filing suit maybe six months or nearly a year, which would be within his rights, then we would have a case where the employee could recover compensation for a year and a half or nearly two years or one hundred weeks when he is really not entitled to any during said period of time. I do not believe that to be fair or equitable to the parties involved. I am not unmindful of the humanitarian aims behind our Compensation Statute and the liberal manner in which it should be construed but to allow the majority opinion and its effect to stand would, in my opinion, be stretching the liberality to such an extent never contemplated by the Legislature. I am of the opinion, however, that the procedure as taken by the defendants in the instant case and as outlined by the Statute above quoted does substantial justice to both sides without penalizing anyone.
For the above and foregoing reasons I am of the opinion that the plea of prematurity should be maintained and petitioner's suit dismissed, and I therefore respectfully dissent from the majority herein.
NOTES
[1] We have some doubt in our mind that the issue of whether a refusal to take an operation is reasonable, is one properly to be raised by the plea of prematurity. We have pretermitted a discussion of this phase, because defendant by alternative rule in the nature of an answer admitted of the decree entered of suspension of compensation payments if the employee, after court determination, refused to submit to surgery.

The issue herein is one in the nature of "confession and avoidance""Yes, he is disabled, and nevertheless we have terminated his compensation payments, but we feel we have legal cause to do so". The delicate question of whether an admittedly disabled employee's rights to workmen's compensation may be conditioned upon his submission to surgery, goes to the heart of the merits of the suit. If the plea of prematurity lies in this case, then it also lies in every case where the employee's allegation of nonpayment of compensation to which the employee is entitled, is denied on the ground that the employee is not entitled to any because he is not disabled; which would include almost every compensation suit filed.
Construing the act as a whole, it seems that an employer in a compensation suit is required to file an answer in ten days, LSA-R.S. 23:1315, even if he files other pleadings; and in the failure to file an answer, the court shall "upon simple request" of the petitioner enter a preliminary judgment in his favor, LSA-R.S. 23:1316; or, at the time set for hearing, shall hear the evidence, and shall "decide the merits of the controversy as equitably, summarily and simply as may be," LSA-R.S. 23:1317. This to our notion indicates that most probably the plea of prematurity raises only threshold questions of whether or not the workmen's compensation benefits due (accepting plaintiff's claim of disability as true) are being paid; because if so, the employee is not statutorily entitled to seek a judicial determination of the controversy. If the plea of prematurity goes to the merits, then unless set for trial at the same time as the answer, this raises the probability of a multiplicity of trials of essentially the same issues, in contravention of the simple and expeditious procedure envisioned by the Act.
When the employer denies any liability at all to an admittedly injured employee on the alleged ground that the payment of wages constituted the payment of compensation benefits due, the Supreme Court (reversing this Court) has ordered the plea of prematurity overruled, so that the rights and liabilities of the parties may be determined after a trial on the merits; D'Antoni v. Employers' Liability Assurance Corporation, 213 La. 67, 34 So.2d 378, Thornton v. E. I. Du Pont De Nemours & Co., 207 La. 239, 21 So.2d 46, 47. (See also, Scalise v. Liberty Mutual Insurance Co., La.App., 1 Cir., 84 So.2d 88 at page 98.)