FRUGÉ, Judge.
This is an appeal by the plaintiff, Curtis Desormeaux, from a judgment awarding him total and permanent compensation benefits, but conditioning payment on his submission to treatment and possible surgery in an attempt to alleviate his disability.
Plaintiff suffered injury to his left hand, the condition of which, at time of trial, was that he had a well-healed fracture involving the third metacarpal shaft of the left hand and he had a “stenosing tenosyn-ovitis” to the flexor tend on of the long finger. In more understandable terms, the “tenosynovitis” is an inflammation of the sheath around the tendon. The “ste-nosing” denotes a closing of the sheath over the tendon or a reduction of the space in which is located a tendon. According to the medical testimony in the record, plaintiff’s condition can be aided by treatment, or surgery, the only question being as to the method and time necessary for such treatment.
The medical evidence in the record consisted mainly of the testimony of Dr. Blaise Salatich and Dr. Ray J. Haddad, both orthopedists. On plaintiff’s behalf, Dr. Salatich testified that plaintiff was totally incapacitated from work of a nature to which he was accustomed. He recommended conservative treatment in the form of physiotherapy administered for a sufficiently long period of time. Should this fail he would resort to surgery.
Dr. R. J. Haddad, testifying on behalf of defendants, recommended injections of steriod-cortisone at the site of inflammation and difficulty for a period of six weeks to two months. In the event that this treatment did not cure plaintiff’s condition, he would recommend that plaintiff undergo what he considered to be a minor surgical procedure, four to six weeks after which he believed plaintiff could be returned to work.
The trial court accepted the recommendations involving the injections and possible surgery, over that of the physiotherapy method, simply because it chose to give more weight to the testimony of Dr. Had-dad over that of Dr. Salatich. Based upon its acceptance of Dr. Haddad’s recommendation it conditioned plaintiff’s award as follows:
1. It was ordered that plaintiff submit to the treatment recommended by Dr. Haddad, said treatment to be performed by Dr. Haddad or other doctor of defendants’ choice. The treatment was to begin no later than February 17, 1969, or sooner, by agreement of counsel. If plaintiff refused to submit, defendants could cease payment of benefits.
2. A period not to exceed four months was granted from the commencement of treatment for the purpose of determining whether or not the treatment would alleviate plaintiff’s condition without surgery.
3. If on or before the expiration noted above, Dr. Haddad or other physician performing the treatment indicated that surgery as indicated in the record would become necessary, then the plaintiff was to submit to said surgery within thirty days of receipt of the report or letter from the physician. The period could be extended by the court for cause. Sur *200 gery would be performed by surgeon of plaintiff’s choice.
4. The defendants were reserved the right to show that by reason of the treatment, or surgery, that plaintiff’s disability no longer exists, and that compensation should cease.
5. If surgery was indicated as necessary, and plaintiff refused to submit to such under the terms and conditions indicated by the judgment, then defendants were authorized to discontinue payments.
Plaintiff complains in his appeal that the court committed error in selecting the more radical treatment of injection and possible surgery, recommended by Dr. Haddad, over the somewhat more conservative approach of Dr. Salatich, and by holding that plaintiff might forfeit his compensation benefits if he does not submit to the treatments advocated by defendants’ witness.
The jurisprudence of our state is uniform to the effect that while the courts may not compel an injured employee to submit to certain treatment or surgery, the courts may order compensation payments withheld from an employee who unreasonably refuses to submit to treatment or surgery which will remove his disability. Borders v. Lumbermens Mutual Casualty Company, 90 So.2d 409 (La.App. 1st Cir., 19S6), and citations therein.
In view of the above, the sole issue remaining is whether the trial court committed error in burdening the receipt by plaintiff of compensation benefits with the conditions noted above.
In considering the propriety of the trial court’s ruling, we note that our jurisprudence has established three tests to be applied in determining whether an employee should be required to undergo treatment or surgery under penalty of forfeiting his compensation- benefits.
(1) Can the treatment or surgery reasonably be expected to relieve the disability ?
(2) Will it cause the claimant a minimum of danger to his life and a minimum of pain?
(3) Is there substantial agreement among all medical witnesses as to the necessity of the treatment or operation and the possibility that the disability will be cured without reoccurrence ?
Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4th Cir., 1968); Duplechien v. States Exploration Company, 94 So.2d 460 (La.App. 1st Cir., 1957); and Borders v. Lumbermens Mutual Casualty Company, 90 So.2d 409 (La.App. 1st Cir., 1956), and many citations therein.
In considering each of the three tests noted above, in light of the evidence in the record, we find the following:
Concerning the first test, Dr. Haddad was of the impression that the injections into the area may cure the inflammation around the tendon sheath and cause the symptoms to disappear. He noted that if there was what could be called a mechanical problem in the tendon, “say a frayed or loose tag or if the sheath has gotten too thick, then further treatment would have to be indicated.” Further, if the conservative treatment were to fail, he recommended what he termed to be a minor operation, called in laymen’s terms a “trigger finger release”. This operation he felt had a ninety percentile chance of alleviating plaintiff’s condition. Without the treatment or surgery the doctor felt that plaintiff’s condition would definitely not improve and would in fact worsen.
As to the second test, the question of whether the treatment or operation would cause the claimant a minimum of danger to his life and a minimum of pain, the doctor testified that there would be no hazard to life or limb. He noted that the operation could be easily performed in an out-patient operating room of a hospital, using a local anesthetic, either a novacaine or a xylo-cane, and that the procedure would require only a small, at the most an inch, incision *201 in the palm of the hand, and the cleaning out of the thickened tissue. He felt the patient could go home wearing a dressing for a week or so, and then the dressing would be removed. The stitches could probably be removed in about two weeks, and then there would be another two weeks, awaiting the dissipation of swelling and discomfort of the hand.
Regarding the third test, we note a minor dispute between the medical experts, principally over the injections, but we feel that the divergence of opinion as to the method of conservative treatment is of little import. Dr. Salatich saw some danger in the injections, but that danger is no greater than would be encountered in any type of injection. He would not recommend the steroid-cortisone, but agreed that if his method were to fail, and he gave no further assurances of success than were given by Dr. Haddad, that he too would recommend a type of surgical procedure, what exactly he did not want to say, he only noted that it would be explorative in nature.
After a reading of the testimonies, this court agrees with the trial court that the testimony of Dr. Haddad was more specific, direct, and persuasive, than was that of Dr Salatich, who in commenting on the approach to be taken, we feel, was rather evasive and inconcrete.
In general, his testimony, we feel, was so inconcrete that we cannot say that it was in conflict with Dr. Haddad’s. As to the issue of treatment and possible surgery over no treatment and surgery we feel the experts were in accord.
The district court based its ruling on the testimony of Dr. Haddad, and in so doing we can find no error, Lucius v. Stonewall Insurance Company, 215 So.2d 843 (La.App. 3d Cir., 1968). Having found the lack of such error in the district court’s ruling, we must affirm its decision.
In his brief, the defendants cite cases they allege uphold their position, that the treatment and surgery recommended by Dr. Haddad should not have been considered by the trial court. These cases are Borders v. Lumbermens Mutual Casualty Company, 90 So.2d 409 (La.App. 1st Cir., 1956). Sumrall v. J. C. Penney Company, 101 So.2d 758 (La.App. 1st Cir., 1958); Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4th Cir., 1968). These three cases we feel support the judgment of the trial court and our af-firmance of that judgment. In the Borders case, the court refused to withhold compensation benefits if the plaintiff did not submit himself to an operation, but it is to be noted that there was a lack of sufficient proof that the operation would in fact remove his disability. In Sumrall v. J. C. Penney Company, supra, the court simply affirmed the trial court’s judgment, saying that the plaintiff did not have to go through with the second operation where the first operation was unsuccessful and presumably the cause of the disability causing the need for the second operation. In Hamilton, the court of appeal held that the operation was neither dangerous nor attended by unusual risk, and its being reasonably sure of success, the claimant would be required to undergo the operation or forfeit the compensation.
For the foregoing reasons, the judgment of the district court is affirmed. Costs to be paid by the plaintiff-appellant.
Affirmed.