HOOD, Judge.
This is a workmen’s compensation suit instituted by Calvin Bass against Service *350 Pipe Trucking Company, Inc., and the latter’s insurer, Employers Mutual Liability Insurance Company of Wisconsin. Defendants tendered to plaintiff the surgery which is needed to repair his injury, but plaintiff refused that tender. Judgment was rendered by the trial court ordering that plaintiff submit to surgery for the repair of his injury within 45 days from the date of that judgment or, in default thereof, that compensation payments cease. Plaintiff appealed.
The sole issue presented is whether plaintiff was unreasonable in refusing the tender of surgery by defendants.
Plaintiff sustained an injury to his right knee on September 22, 1971, while working for Service Pipe Trucking Company. The injury was diagnosed as a deranged or torn medial meniscus. Dr. George P. Schneider, an orthopaedic surgeon, treated plaintiff for that injury, and he is the only medical expert whose testimony appears in the record. His views thus are uncontra-dicted.
Dr. Schneider feels that the injury is disabling, and that plaintiff will continue to be disabled unless and until his knee injury is repaired. He believes, however, that the injury can be repaired by surgery, consisting of the removal of the cartilage in that knee. A general anesthetic would be required in performing such an operation, and plaintiff would have to be hospitalized for a period of from five to seven days following surgery. Dr. Schneider recommends this surgery, and he feels confident that it will relieve plaintiff of his disability and will enable him to return to heavy manual labor in approximately four months after the operation.
Plaintiff sustained a similar injury to his left knee in 1966, and shortly thereafter that injury was repaired surgically by Dr. Schneider. The surgery performed at that time resulted in plaintiff’s complete recovery from that knee injury, and in due course following the operation he returned to hard manual labor. Dr. Schneider recommends that the same type operation be performed on plaintiff’s right knee at this time, and he feels that the same results should be achieved now as were accomplished in the earlier operation.
In Duplechien v. States Exploration Company, 94 So.2d 460 (La.App. 1 Cir. 1957), the First Circuit Court of Appeal held that the following tests should be applied in determining whether an injured employee should be required to submit to treatment or surgery, under penalty of forfeiture of compensation benefits:
“(1) Can the operation reasonably be expected to relieve the legal disability?
(2) Will it cause the claimant a minimum of danger to his life and a minimum of pain ? ; and
(3) Is there substantial agreement among all medical witnesses testifying as to the necessity for the operation and the probability that the disability will be cured without recurrence ?”
Substantially the same tests were applied in Borders v. Lumbermens Mutual Casualty Company, 90 So.2d 409 (La.App. 1 Cir. 1956); Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4 Cir. 1968); Desormeaux v. American Mutual Liability Insurance Company, 224 So.2d 198 (La.App. 3 Cir. 1969); and Coine v. Smith, 100 So.2d 902 (La.App. 1 Cir. 1958).
The uncontradicted testimony of Dr. Schneider is to the effect that the surgery recommended by him can reasonably be expected to relieve the legal disability, and that it will enable plaintiff to return to the same type of work he was performing at the time the accident occurred. There is no disagreement with Dr. Schneider’s testimony that the surgery recommended is necessary, and that if such surgery is performed it is probable that the disability will be cured without recurrence. Most of the conditions needed to meet the above mentioned tests thus are present here. Plaintiff contends, however, that the oper *351 ation recommended will subject him to more than a “minimum of danger to his life,” and that it will be attended by more than a “minimum of pain.” He argues, therefore, that his refusal to submit to surgery is not unreasonable.
Dr. Schneider classified the operation which was tendered to plaintiff as being major surgery, and he stated that it would have to be performed under a general anesthetic. We understand his testimony to be that there is no particular danger or risk associated with the operation other than the hazard which accompanies the administering of a general anesthetic. He stated that “actually there’s danger with any type of anesthesia,” and that this operation “carries the hazards of any operation under a general anesthetic.” Plaintiff argues that the danger associated with a general anesthetic is sufficient to justify his refusal to submit to the surgery.
In Duplechien v. States Exploration Company, supra, the court held “that in this particular case the risk of death or danger through use of general anesthesia is not substantial enough so as to excuse the employee’s continued refusal to submit to surgery after a final judicial assessment of the risk as such.” The Fourth Circuit Court of Appeal said in Hamilton v. New Amsterdam Casualty Company, supra, that “the risk of danger through the use of a general anesthetic is not so substantial as to excuse a claimant’s refusal to undergo surgery.” And, in Fredieu v. Mansfield Hardwood Lumber Company, 53 So.2d 170 (La.App. 2 Cir. 1951), where the same type of injury and the same surgical procedure recommended here were involved, the court required the injured employee to submit to the surgery which was tendered in spite of the fact that it was to be performed under a general anesthetic, and that “the only danger involved related to the administering of anaesthetic.”
In the instant suit Dr. Schneider recommends surgery on plaintiff’s knee without “any hesitation.” He stated that he would be willing to perform such an operation, that he has performed hundreds of other similar operations, and that he would “expect a good result” in this one. He feels that plaintiff’s present age, 48 years, does not contra-indicate the type of surgery which has been recommended, and that plaintiff’s condition now is more favorable to a successful result of the operation than was his condition in 1966 or 1967 when a similar operation was performed with complete success on his other knee.
Under the circumstances presented here, we find that the surgery tendered to plaintiff will cause him a “minimum of danger,” and that plaintiff thus was unreasonable in refusing the tender on the ground that it subjected him to danger to his life.
Plaintiff argues further that the surgery recommended by Dr. Schneider will cause him to suffer much pain, and that he thus has acted reasonably in refusing the tender of that surgery. Dr. Schneider testified that for the first 48 hours after this surgery is performed plaintiff will have “a considerable amount of pain,” but that thereafter his pain would diminish substantially and progressively, until it disappeared within three or four months. He observed that plaintiff “realizes what he went through with the surgery and the pain that was involved (in 1966 or 1967) and he’s just gun shy about the whole thing.” He also noted, however, that Bass is presently suffering pain in his knee and will continue to suffer that pain if the surgery is not performed.
Plaintiff did not take the witness stand at the trial, but it was stipulated that if he would have testified his testimony would be to the effect that “because of the prior operation, the pain associated with it and the length of recovery, plaintiff is fearful of the operation and refuses to submit to another operation.” According to the stipulation, plaintiff also would testify that he was operated on to repair an inguinal hernia in 1968, and that the operation per *352 formed on his left knee about one year prior thereto was “ten times as painful as the hernia operation.”
The evidence convinces us, as it did the trial judge, that the surgery tendered in this instance would not subject plaintiff to such a degree of pain that he is justified in refusing the tender of such an operation. The injured employee was required to submit to the same type of operation for a similar knee injury in Fredieu v. Mansfield Hardwood Lumber Company, supra. There, where the facts were almost identical to those presented here, the court said:
“We are convinced that plaintiff’s ability to resume work can and will be restored from operations by a competent surgeon, and that such an operation will be attended by a minimum, if any, danger of ill effects. He owes it to himself, at least, to submit to such an operation rather than go through life, possibly a cripple.”
In French v. Employers Mutual Liability Insurance Company of Wis., 70 So.2d 179 (La.App. 2 Cir. 1954), the injured employee also was required to submit to the same type surgery as has been tendered here. The court stated in that case that:
“We are convinced from all of the testimony in the case that plaintiff’s condition can be corrected, if not completely cured, by a relatively simple operation; that such an operation is in no sense dangerous to life, or attended by unusual risk, and is reasonably sure of success, and that plaintiff is under a duty to submit to such operation, without cost to him, and by an expert of his choice, in order to correct and relieve his existing disability and in order to restore himself to a state of usefulness to himself, his family, and society.”
We realize that writs were granted in French, but the case was never reviewed —probably because it was settled before the higher court had an opportunity to consider it. We agree with the conclusions reached by the Second Circuit Court of Appeal as to that issue, however, and we cannot assume from the fact that writs were granted that the Supreme Court disagreed with the Court of Appeal on that particular question.
Plaintiff has referred us to several cases where the injured employee’s refusal to submit to surgery was held to be reasonable. We distinguish each of these cases. In Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759 (1922), and Simmons v. Blair, 194 La. 672, 194 So. 585 (1940), for instance, the evidence failed to show a probability that the injuries would be cured by the operations which were tendered.
In Coiné v. Smith, supra, cited by plaintiff as being particularly applicable here, two of the five physicians who testified felt that the operation was unnecessary, and the medical evidence also showed that the operation would subject the employee to a “real danger.” No such circumstances exist in the instant suit.
And, in Patterson v. Cargo Services, 95 So.2d 49 (La.App.Orl.1957), one of the or-thopaedic surgeons who testified felt that the recovery prognosis following surgery would not be good because of the danger of aggravating an existing arthritic condition. No such danger has been shown to exist here.
Our conclusion is that plaintiff was not justified in refusing to submit to the surgery which was tendered on the ground that it would subject him to more than a minimum of danger or would be attended by more than a minimum of pain. This is not to state, however, that a compensation claimant, under all circumstances, may never be justified in refusing surgery based on fear and concern for his physical well-being because of experiences undergone as a result of previous surgery or surgeries. Tn each such case the question of whether he is justified in refusing surgery must be determined by the facts of each particular case.
*353 We are reluctant to require an injured litigant to submit to surgery of any kind as a condition precedent to payment of workmen’s compensation benefits. We believe such a requirement must be made in a case such as the instant suit, however, where the operation tendered is relatively simple, the advantages to be procured thereby are so nearly certain, and where there is only a minimum of risk or of pain.
For the reasons herein set out, therefore, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.