LOTTINGER, Judge.
This is a workmen’s compensation suit arising out of accidental injuries received by the plaintiff on October 22, 1951, at which time the plaintiff was working for the defendant’s assured, J. A. Myers, in a *676 stump wood operation. The petition alleges that on said day while performing duties arising out of and within the course and scope of his employment, i. e., while loading stump wood onto a truck, a piece of wood fell upon petitioner’s right hand and thumb which resulted in the amputation of the thumb. It is alleged that in addition to the amputation of the thumb, the plaintiff suffered neuroma and hone spur at the site of the amputation as well as injury to the radial nerve. It is further alleged that in addition to being entitled to benefits for total permanent disability, that the defendant, notwithstanding proper notice and demand, had arbitrarily and without probable cause, failed to pay the compensation benefits due, and is, therefore, liable to a 12% penalty as well as for attorney fees in the amount of $750 under the provisions of LSA-R.S. 22:658.
The answer of the defendant denies that plaintiff sustained injuries to his hand and thumb on the day alleged but avers that compensation benefits' in the amount of $30 per week were paid from October 22, 1951, to about January 15, 1955. It is averred that the plaintiff has, since long before January, 1955, been able to return to work and perform all the duties of his previous employment. Alternatively, it is pleaded that should the court find that plaintiff did sustain injuries on October 22, 1951, and that he was disabled as a result of same, that defendant is entitled to a credit for compensation and medical expenses heretofore paid, the latter amounting to the sum of $474.38. A supplemental and amending answer was subsequently filed which alternatively set forth that if the plaintiff is disabled as the result of the alleged accident, and if the disability is due to the presence of bone spur and/or neuroma at the amputation site, that then and in that event such bone spur and/or neuroma can be removed by a relatively simple operation which would not endanger plaintiff’s life or cause any undue suffering. The amended answer then goes on to specifically tender such operation, to be performed by a doctor of plaintiff’s choosing at defendant’s expense, and alleges that compensation benefits in the amount of $30 per week from January 8, 1955, through the period of plaintiff’s recuperation from the operation, will be paid.
Following trial on the merits in the court below, judgment was rendered in favor of the plaintiff awarding him benefits at the rate of $30 per week beginning October 22, 1951, for and during the period of his permanent partial disability, not to exceed 300 weeks, less the compensation previously paid by defendant at the rate of $30 per week from October 22, 1951, through January 8, 1955. The judgment also ordered the plaintiff, within 60 days after entry of the judgment, to submit to an operation by a doctor of his own choosing, said operation to consist of the removal of bone spur and/or neuroma at the site of the amputation of his right thumb, said operation to be at defendant’s expense and upon plaintiff’s failure to submit to said operation within 60 days from the entry of the judgment, his right to compensation benefits.to cease. Plaintiff’s demand for penalties and attorney fees was denied.
Although we cannot find in the transcript, either in the minutes or otherwise, a motion and order for appeal, we do find at page 146 of the transcript a motion suggesting to the court that a motion for a devolutive appeal had theretofore been granted in behalf of the plaintiff and the devolutive appeal bond fixed at $350. This motion goes on to suggest that the plaintiff had theretofore been granted leave to prosecute the suit in forma pauperis and therefore the order fixing the devolutive appeal bond at $350 is set aside and plaintiff granted leave to prosecute his appeal in forma pauperis. On appeal, the plaintiff assigns as specification of errors on the ■part of the court below, the failure to award him benefits for total permanent disability and the failure to award him penalties and attorney fees. The appeal has been answered by the defendant who alleges that the judgment appealed from is correct except insofar as compensation benefits were allowed. Alternatively, it is set forth that should this court conclude that plaintiff ia entitled to compensation benefits, the judg« ment appealed from should be affirmed.
*677 In their brief filed with this court, the attorneys for the plaintiff vigorously contend that the record shows the latter to be totally and permanently disabled rather than permanently and partially disabled as found by the trial court. The record discloses without question that the plaintiff is presently totally and permanently disabled and entitled to the sum of $30 per week. This fact is made obvious by the testimony of Dr. George B. Briel, an orthopedic specialist who examined the plaintiff in both 1952 and 1955. At the time of his first examination, on June 19, 1952, Dr. Briel found the following:
“This man had an amputation of the right thumb at about the level of the metacarpal phalangeal joint. He had an area of hypoesthesia and anesthesia which suggests destruction of the lateral branch of the radial nerve in the hand. The area of tenderness and the pain up the arm were due to pressure on the end of the branch of the median nerve to the thumb, probably due to a neuroma at the cut end of the nerve.
“Q. Well, assuming that at the time of the accident he was engaged in shooting and loading stumps, which work included drilling holes in the •stumps with a large auger and chopping of stumps with a large axe, a six pound axe, loading heavy pieces of stump wood into a truck and other work of similar nature in the stump wood business, as of the date of your examination on June 19, 1952, what was your opinion as to his ability to do that type of work?
“A. I do not believe he could handle that type of work with only the four fingers because he had no grasp in his hand.”
Testifying with respect to his examination of May 27, 1955, this doctor reached the following conclusion:
“Q. What was your conclusion as of the date of this examination?
“A. I was of the opinion as I had been on the previous examination, that this man still had evidence there of tenderness over the stump and still showed evidence of irritation probably of that spur and of a possible neuroma of the median nerve.
“Q. Was your opinion the same as to his ability to perform his usual type of work?
“A. Yes. I didn’t feel that the man could do any type of work' ivith that hand because in my examination when I tried to force things into his hand at that point, as •soon as you touched the points which I have described as being tender his hand would back off from the object and I do not believe, that he could grasp anything because of the tenderness'-.which was present at that point.” (Italics ours.) •
While it appears that the plaintiff was either examined by or treated, at the defendant’s' requést, by three other doctors, none of these gentlemen were called upon to testify. A review of the lay ■ testimony with regard to plaintiff’s disability would not only be lengthy but .would' add nothing to the case in view of Dr. Briel’s testimony as set out above. ‘ Suffice it to say that we are convinced from both the medical and lay testimony that the plaintiff is presently totally and permanently disabled.
We are likewise convinced, from the medical testimony of Dr. Briel, that the plaintiff should be required to undergo an operation. This doctor stated that he did not think the plaintiff could do any type of work because of the tenderness in his hand and he was of the .opinion that such .tenderness was caused either by the presence of a bone spur or a possible neuroma. He recommended an operation for the removal of the bone spur, as well a-s the neuroma, if the latter existed, and was of the opinion that this would do away with the pain at the site of the amputation. It was his opinion that such an .operation would be a minor one, neither endangering life nor causing serious complications and one which would not subject the plaintiff to extensive pain. In view of this uncontradicted testimony, *678 we have no alternative but to affirm the ordering of the operation. See Leday v. Lake Charles Pipe & Supply Co., La.App., 185 So. 655.
While it is true that Dr. B-riel did state that even if the operation were successful, the plaintiff would experience difficulty in lifting heavy stumps without a thumb, he admitted that there were a number of other common labor jobs that the plaintiff could do if the operation were successful.
There only remains for consideration the question of penalties and attorneys’ fees. Plaintiff attempted to introduce medical reports in connection with his claim for penalties and attorneys’ fees for the limited purpose of showing that defendant had full knowledge of plaintiff’s condition at the time compensation was discontinued, but the Lower Court did not permit the introduction of same. Plaintiff nevertheless attached said reports to a bill of exception and same are now found in the record. We are of the opinion that the Lower Court was in error as said reports were admissible for that limited purpose.
Mr. Howard T. DeVane, Claims Supervisor of the defendant Insurance Company, gave the following testimony with regard to the termination of compensation:
“On December 9, 1954, I received an interoffice memorandum from our field representative in that particular area who had performed what we term activity check on this man.
The Court: What kind of check?
The Witness: Activity check.
—on the man and he reported to me that he had 5ound the man working and that he had statements from fellow employees of this man to the effect that the man was performing his work satisfactorily without complaint. And also from his employer that he was performing his work as a laborer satisfactorily without complaint. That his duties on that particular job consisted of the removing of stumps from a road right of way, using an ax to shop trees on the right of way, and to cut fence staples. Using a shovel to mix concrete and using a post-hole digger and driving a truck. It was my opinion at that time that the duties described by his fellow workers and his employer, along with the fact that they had advised us that he was doing the work without complaint of his hand, constituted similar duties to the work that he was performing when he was injured and he was therefore no longer disabled, so I terminated his compensation.”
While it is true that the company was in error in so doing, we do not think that the company acted arbitrarily or without justification in terminating compensation when it had this information in its possession. The record reflects that the information in the company’s hands was gathered by its co-employees from fellow employees of the plaintiff. The men who gave these statements testified in a very contradictory and unsatisfactory manner during the trial of the case. However, their statements, which were given to the company prior to the termination of the benefits, appeared to substantiate the company’s conclusion that the plaintiff was no longer disabled and we think that it was justified in doing what it did, and should not therefore, be subjected to the payment of penalties and attorney fees.
We find it necessary therefore to revise and amend the judgment appealed from, and for these reasons, it is ordered that the judgment appealed from be amended by allowing plaintiff compensation at the rate of $30 per week during his disability for a period not exceeding 400 weeks, beginning October 22, 1951, with legal interest on all payments past due and unpaid until paid, less the compensation previously paid by defendant at the rate of $30 per week from October 22, 1951 through January 8, 1955; the defendant to pay all costs.
It is further ordered, adjudged and decreed that within a period of 60 days from the date on which this judgment becomes final, the plaintiff is required to submit to an *679 operation on his right thumb, as described herein, by a competent orthopedic surgeon of his own selection. and at the exclusive costs of the defendant, and on his refusal to submit to such an operation within that time and without reasonable, grounds, the compensation awarded hereunder is to cease after the expiration of the said 60 days; provided further that at any time, after the said operation herein ordered, the defendant is given the right to show that by reason thereof, or otherwise, plaintiff’s disability no longer exists and his compensation should cease.
Judgment amended and as amended affirmed.