McBRIDE, Judge.
During the course and scope of his employment, Percy Skidmore suffered a trau *771 matic amputation through the middle phalanx of his left ring finger in a grinding machine. Claiming that he is totally and permanently disabled from doing work of any reasonable character, he brought this suit against the employer and its insurer, in solido, seeking to recover workmen’s compensation at the rate of $35 per week for a maximum of 400 weeks; for certain medical expenses; for penalties alleged to be due because of the insurer’s failure to pay compensation; and attorney’s fees.
Plaintiff recovered judgment for workmen’s compensation at the rate of $35.75 per week commencing June 19, 1957, for the period of his disability, however not beyond 400 weeks, subject to a credit of 8 weeks’ compensation paid, and subject to an additional credit of $329.30, with interest on past due installments until paid, and $165 medical expenses. Plaintiff’s medical experts were allowed a fee of $100 each which was taxed as costs. The judgment further decreed that the attorney for plaintiff have a fee of 20 per cent of the amount of the compensation paid under the judgment, not to exceed the statutory limit, which fee is to be paid out of the compensation awarded and at the times and in the manner in which compensation is paid. The defendants have appealed, and to the appeal plaintiff has made answer praying that the judgment be revised in several respects which need not be mentioned here.
At the outset let us say the trial judge was clearly in error in allowing compensation at the rate of $35.75 per week, as that exceeds the maximum limit of $35 provided for by the Workmen’s Compensation Statute.
Skidmore sustained his injury on June 19, 1957, and immediately following the accident was treated by the employer’s physicians by whom he was discharged and instructed to return to work on August 3, 1957. He did return to the duties of his former occupation for approximately two months when he quit for the reason he suffered pain in the stump of his injured finger. However, plaintiff obtained employment with another concern in November of 1957 and worked on this job until the month of June 1958.
There is no question that the stump of Skidmore’s injured finger is in an extremely painful condition, and it is certain he cannot return to his former occupation without severe pain or carry on any occupational duties similar thereto. The evidence shows pain is caused by changing atmospheric conditions, the coming of the stump of the finger into contact with other objects, and we are told by one of the doctors that even sound vibrations might cause pain. One of the physicians stated the pain was much like a toothache, while another said it was similar to the kind of pain suffered when one bumps his crazy bone. There is no question there is constant pain and extreme sensitivity to touch.
The legal contest in this case is whether plaintiff should submit to the operation defendants tendered to him. However, the record is not clear as to when the tender was made. The medical question is whether Skidmore has a neuroma or a causalgia. We understand a neuroma is the expansion of the nerves into the scar tissue at the tip of the stump where an amjjutation has taken place, the nerves continuing to grow like an overgrowth or mushroom at the point of severance. A causalgia, according to our understanding of the medical testimony, is a pain that occurs after trauma, or injury, which is believed to result from an over-activity of a separate nervous system, the sympathetic nerves accompanying the blood vessels rather than the ordinary nerves coming from the brain.
All medical evidence in the record is to the effect that the correction of a neuroma is a minor operation which is done in the doctor’s office under local anethesia, neither endangering the patient’s life nor causing serious complications. Neuromas after correction do sometimes reoccur, but this seems to be more the exception than the rule. Our brothers of the First Circuit in the case of Clements v. Liberty Mutual Insurance Co., *772 La.App., 85 So.2d 675, ordered an injured workman to undergo an operation for the removal of a bone spur and neuroma, expressing the opinion that the operation would be a minor one without risk to the patient’s life and would not likely cause pain or result in unfavorable complications. On the other hand, causalgia can only be corrected by an operation (stellate gangliec-tomy) which the doctors describe as being major in character with some risk to the patient’s life and with the extreme likelihood that the lid of his eye on the side of the operation will droop as a result of the surgery.
Therefore, we are vitally interested in knowing as a fact whether the claimant before us has a neuroma or is the victim of causalgia. Dr. James T. Nix, a general surgeon who examined plaintiff on three occasions, stated that his belief was that plaintiff had a minor causalgia; plaintiff’s other medical expert, Dr. John A. Colclough, neurological surgeon, states that he is not certain whether the claimant’s condition results from a neuroma or from causalgia. Dr. Daniel C. Riordan, an orthopedic surgeon, who examined plaintiff on behalf of defendants, states in a positive manner that in his opinion Skidmore has a neuroma which could easily be removed by a simple surgical process under local anesthesia, and that after a few weeks of convalescence, he would be able to return to work.
Both Drs. Nix and Colclough point out that there are certain clinical tests which can be resorted to to aid in determining whether a patient has a neuroma or a caus-algic condition but that Skidmore refused to submit to either of these tests and, of course, they were not made. Dr. Colclough indicated that with the aid of the tests, he could distinguish the condition as between a neuroma and causalgia.
The test for proving the validity of a causalgia is to place a long needle at the proper position in the patient’s neck and to push it straight in until the vertebral column and the ganglion, or a part of the sympathetic chain of which the stellate ganglion is a part, are struck; this is followed by an injection of novocain which anesthetizes the stellate ganglion and results in an increased blood flow to the extremity on the side the block is done. If the case be one of causal-gia, the novocain block which produces these effects will completely relieve the pain for about twenty-four hours.
The other test will not relieve the pain of causalgia but it will relieve the pain in a neuroma. Dr. Colclough, who examined Skidmore at the request of Dr. Nix recommended that Dr. Nix perform this latter test, which is an injection to the nerve on each side of the finger in an effort to relieve the pain. We gather that if such injection has the effect of relieving the pain, the condition could be diagnosed as a neuroma.
It could hardly be expected that any court would order or require that Skidmore undergo the stellate block test as the expert medical testimony demonstrates that there is some risk attendant thereto and that on occasions patients have died undergoing the same. This test should be made in a hospital. On the other hand, the digital block test, i. e., the administering of the injection into the nerve on each side of the finger, seems to be a comparatively simple one and can be conducted without discomfort to the patient. Plaintiff’s doctors agree on this, and we cannot understand why Skidmore refuses to let the doctors perform the digital block.
We have before us a man who steadfastly refuses to undergo a simple test which, as we understand from the doctors’ testimony, could possibly establish whether his disability results from a neuroma which, as we have said, can be removed without any appreciable difficulty whatever by a matter of simple surgery. If his condition is actually a neuroma, then under the laws and jurisprudence of this state he might not be eligible for compensation because of non-cooperation from the time defendants tendered the operation to him. This court is called upon to speculate whether plaintiff’s condi *773 tion is one which can be surgically corrected without difficulty by an operation when there is a simple test available by which it can be determined whether the difficulty results from a neuroma. We are unable to accurately tell from the doctors’ testimony the nature of plaintiff’s complaints, but we believe from the evidence that if the digital block test was made, there would be much to enlighten the court as to Skidmore’s actual condition, and we would then be in a better position to say whether he should undergo surgery for the purpose of doing away with the pain he suffers at the site of the amputation which is causing the disability.
A reviewing court should remand a case for further proceedings whenever the ends of justice would be subserved thereby, and in fairness to the plaintiff, the defendants, and also to ourselves, we think this case is a fit subject to be remanded. We reason that if we have the power to require that a claimant submit to simple surgery in order to eliminate the source of his disability, we are also authorized to exercise the same prerogative in a proper case in the matter of simple clinical tests. An injured workman should be cooperative with the physicians both in the matter of diagnosis and treatment, and we think that the claimant in this case should undergo the digital block test, or any other tests which do not endanger his condition, well-being, or life, in order that it might be ascertained what his true condition is, and we shall remand the case to the court below for that purpose and for the submission of the reports of the medical experts on the results. The plaintiff is ordered to submit to such test within thirty days from the finality of our decree. We call attention to the fact that under the articles of the Code of Practice, art. 442, the trial judge, if he chooses to do so, might appoint his own experts to examine the claimant in this case to determine the nature of his injury.
For the reasons assigned above, the judgment appealed from is set aside, and it is now ordered that this case be remanded to the trial court for further proceedings not inconsistent with our views above expressed and in accordance with law, and the trial judge is directed to render such judgment as is warranted under the law and the evidence; in adjudicating the matter he may take into consideration the evidence already adduced together with whatever new and relevant evidence may be presented to him.
All costs, including the costs of this appeal, are to await a final determination of the case.
Set aside and remanded.
JANVIER, J., takes no part.