REGAN, Judge.
Plaintiff, Percy Skidmore, instituted this suit against the defendants, Drumon Fine Foods, Inc., his former employer, and Hardware Mutual Casualty Company, its compensation insurer, endeavoring to recover workmen’s compensation at the rate of $35 per week for 400 weeks, medical expenses, penalties and attorney’s fees, for an injury suffered during the course and scope of his employment, which necessitated the amputation of part of his left ring finger. Plaintiff asserted that after severance of the digit, a sensitivity developed in the stump, rendering him incapable of working without pain.
Defendants answered admitting the em ■ ployment and accident, but asserted that the painful condition could be alleviated by a minor operation, entailing little pain and no danger to plaintiff, and that plaintiff's, refusal to submit to treatment rendered him ineligible for compensation benefits because he failed to cooperate.
From a judgment awarding compensation to the plaintiff, the defendant appealed,.
*524 On the first appeal[1] this court set aside the judgment of the lower court and remanded the case for further medical investigation, which, the record indicated, could determine the nature or cause of plaintiff’s complaints, and thus enable us to ascertain whether plaintiff should submit to surgery in order to eliminate the pain, which is the cause of his disability.
The unresolved medical enigma which prompted us to rematid the case posed for. our consideration the question of whether plaintiff was suffering from a neuroma or a causalgia, the former, a minor disorder restricted to the affected area which may be corrected by harmless minor surgery, while the latter requires an operation termed a stellate gangliectomy, considered as major surgery. Plaintiff had steadfastly refused to submit to tests [2] to determine his condition, and the medical testimony on the first trial, hereof indicated that a digital nerve block test could establish the cause of plaintiff’s pain.
In compliance with our order, plaintiff’s counsel tendered the claimant to Dr. Richard Levy, a neurosurgeon, who performed the digital nerve block test. Both Dr. Levy and Dr. James T. Nix, a general surgeon, testified after the test was performed, and the lower court again rendered judgment in favor of the plaintiff for compensation at the rate of $35 per week for the period of his disability, not to exceed 400 weeks, “subject to a credit for eight weeks compensation[3] and subject to an additional credit of $329.30, “plus medical expenses of $165 and expert fees in the amount of $200 for Dr. Nix and $100 for Dr. J. A. Col-clough.
From this second judgment, defendants have prosecuted this appeal. Plaintiff filed an answer thereto and asserted that the judgment should be amended to correct the amount credited to the defendants, to include $2,500 medical fees, to increase the medical experts’ fees and to grant penalties and attorney’s fees to the plaintiff.
The medical facts are still disputed. In any event, Dr. Richard Levy, who performed the digital nerve block on May 25, 1959, described the procedure as follows:
“ * * * I carried out a digital nerve block, injecting three ccs of a local anesthetic, 2% zylocaine. That was on each side of the left ring finger at the metacarpel phalangeal junction. Within three to five minutes from the time of the injection, the patient had an anesthesia of the entire left ring finger. At this time I palpatafed and percussed and stuck with a pin the stump in an effort to learn of any pain. I did this with the patient’s head turned away from his hand. I could not elicit any pain in the stump by these manuevers.”
Dr. Levy positively stated this test pinpointed the cause of pain as a neuroma, *525 which may be removed by minor surgery. If the plaintiff had suffered from causalgia, Dr. Levy asserted, the pain would not have been alleviated after injection of a local anesthetic.
Dr. Nix also re-examined the patient after this test was made, but he retained his former opinion that plaintiff was suffering not only from neuroma, but also from minor causalgia. He claimed the digital nerve block is not a well accepted test to positively determine the presence of neuro-ma and negate causalgia; however, he did concede that the test performed by Dr. Levy indicated the presence of a neuroma as well as the causalgia. If the causalgia is present, he insists that surgery to remove the neuroma could aggravate the minor causalgia and convert it into major causalgia.
We are, therefore, still confronted with conflicting medical testimony, and the trial judge resolved the doubt in plaintiff’s favor by awarding compensation. The question now before us on appeal is whether this judgment of the lower court was so erroneous and unsupported by the evidence as to warrant a reversal by us.
Counsel for plaintiff contends that the claimant is entitled to maximum compensation benefits and should not be forced to submit to an operation to remove the neuro-mas, because, if causalgia is present, this condition might be aggravated. He further argues that the digital nerve block is not a conclusive test to rule out the presence of causalgia, and this can only be done by submitting plaintiff to the possibly dangerous test of injecting an anesthetic through the neck into the stellate ganglion, which, to some extent, might endanger the patient.
Defendant conversely asserts that the medical testimony preponderates to the effect that the digital nerve block has negated the existence of causalgia, and that the findings of Dr. Levy warrant the court’s ordering plaintiff to have the neuromas surgically removed.
Plaintiff’s own expert, Dr. John A. Col-clough, a neurosurgeon, recommended that the digital nerve block be performed. Pie testified:
“The other test which I recommended that Dr. Nix perform was an injection of the nerve on each side of the finger to see if that would relieve the pain. It would not relieve the pain of a causalgia, but, would relieve the pain of a neuroma. * * * ”
When asked whether surgery to remove a neuroma would aggravate a causalgia condition, Dr. Colclough said that he did not believe that the causalgic condition would be worsened.
Since we are of ths opinion that the medical testimony preponderates to the effect that a digital nerve block is an effective test to determine the presence of a neuroma, and since this test affirmed the plaintiff’s condition as neuroma, no useful purpose would be served in engaging in any further protracted discussion of the medical testimony adduced in the trial court after the remand hereof. We are convinced from all of the testimony that plaintiff’s condition may be completely cured by a relatively simple operation. The operation is in no sense dangerous or attendant by unusual risks and it is reasonably sure of success; therefore, plaintiff is obligated to submit to this surgery without cost to him by an expert of his choice within sixty days from the date on which this judgment becomes final.[4] We believe that it is only fitting and proper that plaintiff undergo this minor surgery so as to correct and relieve his existing disability in order to restore himself to a state of usefulness, which, of course, will inure to the benefit of himself, his family and society.
Plaintiff contends further that defendants’ action in withholding compensa *526 tion benefits from the plaintiff while litigation was pending to determine whether the workman might reasonably refuse to submit to surgery to remedy his complaint was clearly arbitrary and capricious; therefore, the lower court’s judgment should be amended to include attorney’s fees and penalties.
The more recent jurisprudence [5] emanating from the appellate tribunals of this state supports the plaintiff’s contention. The rationale thereof is that, while litigation is pending to determine the issue of corrective surgery, the workman is in fact totally and permanently disabled. The remedy of the compensation carrier is to institute an action in conformity with the provisions of LSA-R.S. 23:1311[6] to have the question judicially determined, since litigation thereunder may be instituted by either party. In withholding compensation, the employer, ex parte, endeavors to resolve a legal question and not a question of medical fact, where, as in this case, there is disagreement among the medical experts as to the nature of the injury and the corrective measures therefor. Since the medical experts all agree that the plaintiff is totally and permanently disabled at this time, we believe it is proper to assess penalties and attorney’s fees.
In the lower court, judgment awarding compensation benefits for 400 weeks was rendered in view of the fact that the judge thereof concluded that the plaintiff should not be required to submit to minor surgery.
We find it necessary, therefore, to revise and amend the judgment appealed from, and for these reasons, it is ordered that the judgment appealed from be amended by allowing plaintiff compensation at the rate of $35 per week during his disability for a period not to exceed 400 weeks, beginning June 19, 1957, with legal interest on all payments past due and unpaid until paid, less the compensation previously paid by defendant at the rate of $32.93 per week for a period of ten weeks, or $329.30, and less eight weeks full compensation, or $270.[7]
It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendants for 12% penalties on the amount of compensation past due, or which in the future may become past due, together with 20% attorney’s fees on those amounts, provided the attorney’s fees do not exceed $2,500. Defendants are to pay all costs.
It is further ordered, adjudged and decreed that within a period of 60 days from the date on which this judgment becomes final, the plaintiff is required to submit to an operation on his left ring finger, as described herein, by a competent surgeon of his own selection, and at the exclusive cost of the defendants, and on his refusal to submit to such an operation within that time, the compensation awarded hereunder is to cease after the expiration of the said 60 days, provided further that at any time after said operation herein ordered, the defendants are given the right to show that by reason thereof, or otherwise, plaintiff’s disability no longer exists and his compensation should cease.
*527 Judgment amended and as amended affirmed in part and reversed in part.
Amended and affirmed in part and reversed in part.

. Skidmore v. Drumon Fine Foods, Inc., La.App., 1959, 110 So.2d 770.

. The test for- proving the validity of a causalgia is to place a long needle at the proper position in the patient’s neck and to push it straight in until the vertebral column and the ganglion, or a part of the sympathetic chain of which the stel-late ganglion is a part, are struck; this is followed by an injection of novocain which anesthetizes the stellate ganglion and results in an increased blood flow to the extremity on the side the block is done. If the case be one of causalgia, the novo-cain block which produces these effects will completely relieve the pain for about twenty-four hours. It is conceded that there is some hazard attached to this test.
The other test, a digital nerve block, will not relieve the pain of causalgia but it will relieve the pain in a neuroma. Dr. Colclough, who examined Skidmore at the request of Dr. Nix, recommended that Dr. Nix perform this latter test, which is an injection to the nerve on each side of the finger in an effort to relieve the pain. We understand that if such an injection has the effect of relieving pain, the condition could be diagnosed as a neuroma. Little, if any, hazard exists in connection with this test.

.This was for the period of time that plaintiff worked for his employer after the accident.

. See Clements v. Liberty Mutual Insurance Company, La.App., 1956, 85 So.2d 675.

. Sumrall v. J. C. Penney Co., La.App., 1958, 101 So.2d 758; Patterson v. Cargo Services, Inc., La.App., 1957, 95 So.2d 49; Duplechien v. States Exploration Co., La.App.1957, 94 So.2d 460.

. “In case of dispute over or failure to agree upon a claim for compensation between employer or employee, * * * either party may present a verified petition to the district court which would have jurisdiction in a civil case, * *

. Prom June 19, 1957, through August 28, 1957, plaintiff was treated for the injury to his finger and medically discharged on the latter date. For these ten weeks he received weekly compensation benefits of $32.93. From approximately September to November of 1957, plaintiff returned to work for Dromon Fine Foods, and according to his testimony, he performed the identical duties during this period as he had prior to the accident. However, after eight weeks, he quit his job because he was unable to work without pain. During this eight weeks he was paid his full salary of $55.