MILLER, Judge
(dissenting).
I respectfully dissent.
First, plaintiff did not establish that an accident occurred on or about June 2, 1969. Second, if plaintiff did sustain an accident, his interest demands that he submit to surgery.
1. Did plaintiff prove the accident?
Our opinion states that “the trial court recognized discrepancies in the testimony of the witnesses, and said that nonetheless, he felt that the plaintiff still had borne the burden of proving that an accident did occur * * *”
The trial judge’s opinion concerning proof of the accident is as follows:
“This is a workmen’s compensation suit arising out of an alleged accident which occurred in the course of plaintiff’s employment as a plumber and pipe fitter on or about June 2, 1969. Adequate evidence exists under the jurisprudence and the law of this case to establish that plaintiff did suffer, as a result of an accident on or about that date, three hernias, they being two inguinal and one umbilical hernia. Although there is some discrepancy in the testimony of the plaintiff and one of the witnesses to the accident, this Court feels that plaintiff has still borne the burden of proving that an accident did occur in the course and scope of employment and that this accident is disabling within the intendment of the Workmen’s Compensation Act.”
The trial judge’s opinion and our opinion have not discussed the testimony or commented on the credibility of the witnesses.
I agree that very little evidence will prove an accident in a workmen’s compensation case. But that evidence should be convincing. I am not convinced that plaintiff proved he sustained a job-related accident on or about June 2, 1969.
A) The Procter & Gamble job on which plaintiff was employed finished at about the time this alleged accident occurred.
B) This accident was serious enough to cause umbilical and bilateral inguinal hernias. Yet plaintiff did not seek medical attention until June 26, 1969. The June 2nd accident did not prevent plaintiff from seeking employment on June 9th as a welder at a new plant near DeRidder, Louisiana. Dr. Strieker’s routine pre-employment physical examination discovered the right inguinal hernia and plaintiff was not accepted for employment.
An accident which caused a umbilical and bilateral inguinal hernias should be serious enough to warrant prompt medical attention. The fact that plaintiff did not seek medical attention (combined with his seeking employment with another firm) is inconsistent with the finding that he sustained the June 2nd accident.
C) Our opinion states that the report of the accident was made to the office secretary at noon on the day the accident occurred; that the accident report was made and a copy of the report is in the record. I suggest that these statements lead to a conclusion that is not entirely supported by the record.
The office secretary is plaintiff’s sister. The “Date of injury” was given as “June, 1969.” There was no information furnished for the blank: “Describe fully how accident occurred, and state what employee was doing when injured.” There was no information furnished for the blank requiring “Nature and location of injury.” At Tr. 138, plaintiff’s sister was asked:
“Q. Is there any particular reason for those deficiencies?
“A. Yes, like I said, I didn’t feel like that he really was injured. I mean he said he was hurt but I couldn’t see any sign on him and I really had no intention of mailing the report in cause I didn’t know he was *860 really injured.” (Emphasis added).
This report was NOT mailed to the insurance agency until July 17, 1969. It was promptly returned with a request that the form be completed. Suit was filed before the missing information was supplied.
These facts do not support the conclusion that the accident report was routinely handled.
D) On September 12, 1969, plaintiff alleged that the accident occurred “At and near DeRidder, in Allen Parish, Louisiana.” Tr. 2. We have held that plaintiff proved an accident near Pineville, Louisiana.
E) Plaintiff’s father was considered to be plaintiff’s employer. Plaintiff never mentioned the accident or his disability to his father. Tr. 41, 103.
F) Plaintiff continued employment with his father’s corporation through the first week of July, 1969. Plaintiff applied for unemployment insurance on July 30, 1969 and drew benefits through November IS, 1969. Tr. 117. He represented himself as fit for employment as a welder.
G) Plaintiff went to work as a welder in Illinois for a three day period sometime between June and Christmas of 1969. At the May, 1970 trial, plaintiff could not give a more specific date for that employment. Tr. 108.
H) When did the accident occur? In his deposition of October 13, 1969, plaintiff said the accident occurred in early summer. “I laid off two or three days and I got to feeling a little better, and then I went to DeRidder * * * to go to work on a job.” Tr. 34. Plaintiff’s work record shows tha’t he worked 32 hours in the fifth week of May, 40 hours in the first week of June, 32 hours in the second week of June, 24 hours in the third week of June, 16 hours in the fourth week of June, and 16 hours in the first week of July, 1969. The job was completed about the middle of June, 1969.
On redirect examination, at Tr. 117, plaintiff testified:
“Q. Beginning on the week of the accident, the first week of June, do you remember whether or not you got in a full 40 hours?
“A. No, I don’t.
“Q. Well, the following week did the hours that you worked get lesser and ■lesser?
“A. Yes, they did.”
June 2nd was a Monday. In that week he worked his full 40 hours. He applied for work at DeRidder on Monday, June 9, but earned 32 hours with Central Plumbing during the remainder of that week.
Mr. James D. Morace witnessed the accident. He was not employed by Central Plumbing after May 26th. Tr. 56. When Morace was asked to give the date of the accident, he stated it happened in June or July, either one of those two months. Tr. 123. Mr. Byron Dufore says that the accident happened “the latter part of May or the first of June.” Tr. 128.
On June 26, 1969, plaintiff told Dr. Reedy that he was injured six weeks earlier. Tr. 154. On August 11, 1969, plaintiff told Dr. Spruill the accident occurred around July 1, 1969. Tr. 144. Of course, plaintiff did not mention the accident when he was examined by Dr. Strieker on June 9, 1969.
These facts and the testimony summarized are inconsistent with proof that an accident occurred on June 2, 1969.
Accepting the jurisprudential rule that it takes little evidence in workmen’s compensation cases to establish that an accident occurred, this record will not support the finding because there are too many inconsistencies on too many crucial issues. Plaintiff bears the burden of proof in a workmen’s compensation case and must establish his claim by a reasonable preponderance of the evidence. Guillot v. Winn-Dix- *861 ie of Louisiana, Inc., 189 So.2d 52 (La.App. 4 Cir. 1966).
2. Should plaintiff be required to submit to surgery?
The liberal spirit of the workmen’s compensation statute should protect the true interest of the workman. In this case this requires that plaintiff submit to surgery.
The medical testimony established .that plaintiff is subjecting himself to more risk by refusing surgery than by undergoing surgery. Without the operation any hernia may strangulate requiring an emergency procedure with much greater risks. Plaintiff should be able to return to full duty as a plumber within eight to ten weeks after surgery.
This was the testimony of Dr. Thomas M. Reedy. He testified as a witness for plaintiff and stated unequivocally that plaintiff was subjecting himself to more risk by refusing surgery than by undergoing surgery. He stated that it was dangerous for plaintiff not to submit to surgery. Tr. 156, 160. He based his opinion on the fact that plaintiff is young (26), in excellent general health and the surgery is elective.
Dr. F. R. Spruill also found plaintiff a “prime candidate” for an operation to repair all three hernias. Tr. 148, 149. He too stated that it is dangerous for plaintiff to delay the surgery, and much safer to have the surgery. Tr. 147.
Dr. M. E. Gutierrez confirmed these opinions. Tr. 166, 169, 175. He stated that all three hernias could be repaired during one operation. The main danger involved is from the anesthesia — not from the operation itself. He stated that anesthesia techniques have recently improved more than any other phase of medicine. Tr. 170. Dr. Gutierrez was of the opinion that operations to repair a torn meniscus (Tr. 172) and a tonsillectomy (Tr. 153) were more dangerous procedures than the surgical repair of hernias.
The doctors agree that plaintiff should be able to return to full duty as a plumber within eight to ten weeks after surgery. Without surgery his life is in danger at all times, even when he is not working.
I do not accept the statement that there is no authority for forcing plaintiff to submit to surgery under the facts of this case. Courts have ordered operations in many cases. Removal of a torn meniscus of the knee was approved in Fredieu v. Mansfield Hardwood Lumber Co., 53 So.2d 170 (La. App. 2 Cir. 1951) and French v. Employers Mutual Liability Insurance Company of Wisconsin, 70 So.2d 179 (La.App. 2 Cir. 1954). The court approved an operation cutting off the lower 3/4 inch of the inner bone of the right forearm which required a general anesthetic. Duplechien v. States Exploration Company, 94 So.2d 460 (La. App. 1 Cir. 1957). Amputation of the distal phalange of the right index finger requiring a general anesthetic was approved in Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4 Cir. 1968). Operations on fingers were approved in Leday v. Lake Charles Pipe & Supply Co., 185 So. 655 (La.App. 1 Cir. 1939) and Skidmore v. Drumon Fine Foods, Inc., 119 So.2d 523 (La.App.Orls.1960).
The medical testimony uniformly established that this claimant needs the tendered operation to repair all three hernias; that the anesthetic is the most serious risk in the procedure; that the risk of the operation is minimal when compared to the risk of delaying the operation. They agree that after surgery he should be able to return to work within eight to ten weeks.
The jurisprudence has established that claimants must submit to operations where a general anesthetic is required. I submit that there is no reason for the distinction between this case and the cases approving surgery.-
Rehearing Denied Feb. 24, 1971.
MILLER, J., votes for rehearing.