MILLER, Judge
(dissenting).
I respectfully dissent. The majority has failed to mention or consider the fact that it is Dangler’s own surgeon, his own witness, who has testified without contradiction that the distal phalanx of Dangler’s index finger should be amputated. And the majority does not mention or consider the cases of Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4 Cir.1968); Duplechien v. States Exploration Company, 94 So.2d 460 (La.App. 1 Cir.1957); and Leday v. Lake Charles Pipe & Supply Company, 185 So. 655 (La.App. 1 Cir.1939). These cases required the claimant to submit to similar surgeries or forfeit continuation of compensation benefits.
While the majority acknowledged there was no medical evidence questioning the recommended amputation, they failed to grasp the significance of the fact that Doctor Landreneau was claimant’s physician who testified as his witness. Plaintiff did not plead surprise and he is bound by Doctor Landreneau’s testimony.
Did Doctor Landreneau recommend amputation of the entire finger, as indicated by the trial judge’s quoted written reasons and by plaintiff when he stated the basis for his reluctance to submit to the amputation? Tr. 108, 9. The answer is indisputably no, and there is nothing in this record to suggest the contrary. There is manifest error in the trial court’s failure to consider the actual testimony of Dangler’s surgeon, Doctor Landreneau.
There is no medical testimony to indicate the surgery recommended by Doctor Lan-dreneau should not be accepted by Dangler. Dangler would lose only the fingernail and the last phalanx of the finger. Doctor Landreneau testified that he has performed 100 to 200 such operations with a 100% success factor. He testified that there would be no real danger to Dangler’s life and only minimal pain after the amputation. Tr. 44, 5. Without reservation, Dangler’s surgeon recommended this surgery.
Dangler offered no evidence to indicate there is the slightest medical disagreement, much less a serious disagreement, as to the necessity for the amputation and the probability that the disability will be cured without recurrence.
When Doctor Lazaro testified as Dangler’s witness, Dangler did not present evidence to suggest that amputation of the distal phalanx was not indicated; the proposed amputation was not considered by him. Doctor Lazaro was adamant that Dangler is an excellent candidate for surgery; he only thought a second fusion was the preferred treatment.
The trial judge properly refused to order the fusion surgery because of the medical dispute on that issue. However there is no medical opinion opposing the amputation recommended by Dangler’s own surgeon, Doctor Landreneau, who testified as his own witness. His undisputed testimony is persuasive and requires a reversal.
Furthermore, the jurisprudence involving similar conditions which required surgery was not considered by the trial court or the majority; it also requires a reversal.
In Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App. 4 Cir.1968), claimant had been awarded compensation for partial disability of the hand. Defendant insurer tendered an operation and contended claimant should undergo surgery to amputate the first distal pha *51 lanx of his index finger as a condition for continued compensation. Claimant refused the operation recommended by his own specialist. Three tests were used to determine whether a claimant is justified in refusing to submit to surgery: 1) Can the operation relieve the disability? 2) Will it cause a minimum of danger to life and a minimum of pain? 3) Is there substantial agreement among the medical witnesses as to its necessity, and the probability that the disability will be cured without a recurrence ? The three tests were met: 1) There was only a possibility of “phantom pain” common after such amputations and no other disability. 2) The only major risk was attributable to the use of a general anesthetic. 3) As in the present case, only one physician testified about the amputation, hence no disagreement was found. 208 So.2d 158 at 161. The court ordered the amputation holding: “Because only the tip of his index finger is involved, if we do not order this operation, it is difficult to envision a situation in which an operation should be ordered.” 208 So.2d 158 at 162.
The three tests recited in the Hamilton case were approved in Bass v. Service Pipe Trucking Company, Inc., 289 So.2d 78 (La.1974).
In Duplechien v. States Exploration Company, 94 So.2d 460 (La.App. 1 Cir. 1957), the court affirmed the trial judge and required claimant to submit to surgery to have the lower ¿4 inch of the inner bone of his right forearm removed. A general anesthetic was required.
In Leday v. Lake Charles Pipe & Supply Company, 185 So. 655 (La.App. 1 Cir. 1939), the trial court required claimant to submit to a second amputation between the first and second joints of the index finger of his right hand as a condition to receiving further compensation. The procedure there was more radical than that which Dangler’s surgeon proposes, and the procedures are now more refined. Nevertheless, in 1939, the court affirmed on finding the surgery was minor; it was unattended by danger of serious consequences; it involved little pain and suffering, and was almost certain to relieve the disability. The court held it would be unfair and inequitable for claimant to continue to draw full compensation when he had it within his power to minimize the damage by submitting to a minor and relatively simple operation. 185 So. 655 at 657. See also Larson, Workmen’s Compensation Law (1972), Volume 1, § 13.22 and the cases cited at note 15.
Dangler’s refusal of the tendered amputation surgery, unqualifiedly recommended by his own surgeon, is unfair to claimant and his family, for all of them will benefit when claimant is once again able to resume his place as an able bodied workman.
The difference between the majority and dissenting positions is simple: the majority finds a tacit disapproval of the amputation because Dangler’s first surgeon recommended another fusion operation and never considered an amputation; the dissent finds no disapproval, either tacit or expressed, because all physicians unqualifiedly recommended surgery and no medical opinion was expressed which would question the need for, or efficacy of, the amputation. And these facts were developed from Dangler’s own expert witnesses.
It is respectfully submitted that the trial court judgment should be reversed and set aside insofar as it refused to order the surgery which was recommended by Dangler’s own surgeon, who testified as his own witness, without the slightest suggestion of opposition in this record.